# CHRISTIAN HUTTON

*v.*

# JOSEPH ARNETT.

1. EVIDENCE—*parol evidence to vary a writing.* Parol evidence is inadmissible for the purpose of showing that other property, not answering the written description in a mortgage, was intended to be included by the mortgagor.

2. The principle is well settled, that a written instrument can not be varied by parol evidence. The instrument must speak for itself, unless there be a latent ambiguity, which may be explained by such evidence.

3. FORMER DECISIONS. The case of *Myers* v. *Ladd,* 26 Ill. 415, is not in conflict with this principle.

4. CHATTEL MORTGAGES—*description of property mortgaged—must control.* A mortgagee of personal property must see to it that the property mortgaged is correctly and truly described, so that others may not be misled. The description given in the mortgage must control, otherwise great fraud and injury might result.

5. TROVER—*action of—who can maintain.* The doctrine is well settled, that the action of trover may be maintained by a naked bailee.

6. And equally so by a pledgee for value; and, as this court has said, one in such position may loan the property pledged, temporarily, to the pledgor, for a special purpose, and recover in trover, if the property be not returned to him.

7. By an arrangement between A and D, D sold and turned out to A certain cattle, to secure the payment of $85 borrowed money, the property to be A's until the debt was paid, D to have until a day specified to pay it. Afterwards, A loaned the cattle to D, temporarily, and for a specific purpose, D agreeing to re-deliver to him; *Held,* that this transaction amounted to a conditional sale of the property, and D failing to restore it, after the purpose was fulfilled for which it was loaned, A could recover in trover.

APPEAL from the Circuit Court of Whiteside county; the Hon. WILLIAM W. HEATON, Judge, presiding.

The opinion states the case.

Mr. F. VANDERVOORT, for the appellant.

Messrs. SACKETT & BEAN, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of trover, in the Whiteside Circuit Court, brought by Joseph Arnett, against Christian Hutton, for "three head of cattle about eight or nine years old, and one of them three years old last spring, and all of red color."

There was a trial by jury, and a verdict and judgment for the plaintiff.

To reverse this judgment, the defendant has appealed to this court.

One Schuyler Dow was the person through whom these parties claimed, and it was in evidence he borrowed, in the spring, $85 of the plaintiff, and, to secure him, turned out a yoke of pale red cattle, as security, which were to be plaintiff's until he paid the money loaned, and he was to have until the next October to pay the money. The cattle were turned into plaintiff's yard, and, soon after, Dow came to him and said he had a job of breaking to do for a near neighbor, and wished to borrow these cattle to do that breaking. Plaintiff let him have them; Dow did not return the cattle, and some time after plaintiff found them in the prairie near defendant's. Defendant claimed the cattle, and would not settle with plaintiff about them, and while plaintiff was waiting for an officer to replevy them he met Hutton driving the cattle off. They were worth about one hundred and twenty-five dollars; were about eight or nine years old, and pale red, one being lighter than the other; one had a white spot on his forehead and some white spots about the flanks—was not a spotted ox. Schuyler Dow testified that he owned the cattle in question, and sold them, or turned them out to plaintiff, to secure a debt, about the last of March, 1868. They were red, about eight or nine years old. Plaintiff had possession of them five or six hours, and then loaned them to Dow to do some breaking. Dow was to have until the first of the following October to pay the

debt. He bought the oxen of Martin Rice, giving his note for them, defendant signing the note as security.

The defendant, in his testimony, stated that he signed the note to Rice, with the understanding he was to own the oxen until Dow should do enough breaking for him to pay this note, but before Dow did any breaking, he went, with defendant's consent, to do about a week's breaking for another man. Defendant wanted to take the oxen he was security for home with him, but concluded to take a chattel mortgage upon two yoke. Defendant then offered a chattel mortgage, in the proper form, from Dow to him, in which the property was thus described: "One yoke of oxen, seven or eight years old; one of said oxen is a brindle in color, with the point of his horn broken off; the other is a spotted one in color. Also one yoke of oxen four years old, color red."

On objection made by plaintiff that the cattle in controversy were not described in the mortgage, the court excluded it from the jury. The defendant then testified that Dow came back to his place about the middle of June, bringing with him nine oxen, including the "Rice oxen," which was the first time defendant saw them. He broke some prairie for defendant, and went away, leaving all his oxen at defendant's farm. They remained there, running on the prairie, until the 14th of September, when defendant sold them under the mortgage. Some time after, plaintiff came to defendant and claimed the "Rice oxen." Rice stated he formerly owned the oxen in controversy, and said one was red and the other yellow—one has his horn jammed. Thomas Higgins testified, he knew the Rice oxen; one was a dark red, somewhat spotted, the other a light red—thinks both of his horns were somewhat broken. Dow testified, without objection, that the cattle bought of Rice were not included in the mortgage to defendant; that they were another lot of cattle entirely, bought of another person—were not bought of Rice at all.

The defendant then offered to prove by the justice of the peace who drafted the mortgage, and also by his own testimony,

that at the making of the mortgage, he, defendant, had made it a condition that the Rice oxen should be embraced in it ; that Dow assented, and proceeded to dictate to the justice the first yoke of oxen described in the mortgage. This testimony was objected to by the plaintiff, and excluded by the court. The defendant then offered to prove by one Glassburn, and by himself, that Dow had told each of them, on the day of the sale, that the Rice oxen were included in the mortgage, and that there was no incumbrance on the cattle, except defendant's mortgage. This testimony was also ruled out, on objection by the plaintiff, and here arises the first point made by appellant.

. He contends that parol evidence was admissible for the purpose of identifying the property actually mortgaged, and cites *Myers et al.* v. *Ladd et al.* 26 Ill. 415. That case is quite different from this. There, the description itself of the property mortgaged was perfect, but there was a mistake in the deed as to the geographical position of the mill in which it was situated. There, it was held the parol evidence was not only admissible, but was absolutely indispensable, to identify the property described in the mortgage, and when that parol evidence did identify the property consistently with the description in the mortgage, that was sufficient. To illustrate, if one gives a bill of sale of his black horses, and describe them as being then in his barn, he shall not avoid it by showing that the horses were in the pasture or on the road. The description of the horses being sufficient to enable witnesses acquainted with the seller's stock to identify them, the locality specified would be rejected as surplusage. This case has no application to the case at bar.

It is a familiar principle, that a written instrument can not be varied by parol evidence. The instrument must speak for itself, unless there be a latent ambiguity, which may be explained by such evidence. We fail to discover an ambiguity of any kind in the mortgage offered in evidence. Its infirmity consists in not describing the cattle in controversy, and

whatever Dow may have said at the time he executed it, or afterwards at the sale, or at any other time after the plaintiff's rights accrued, was not evidence against the plaintiff. He made, no doubt, if defendant is to be believed, false statements to the defendant and others, but on his oath he says the Rice oxen were not included in the mortgage. They were not, it is clear, if the description therein is to control, and that must control, otherwise great fraud and injury would ,result. A person claiming property like this, under a mortgage, must see to it that it is correctly and truly described, so that others may· not be deceived. If A sells to B, by chattel mortgage, or by an absolute bill of sale, a yoke of brindled oxen, he shall not be allowed to prove they were described in the deed as red. The evidence offered and ruled out was inadmissible, as it contradicted the mortgage.

Another point is made by appellant, that appellee showed no legal title to the property sufficient to maintain trover. It has been long settled, that a naked bailee may maintain such action. But appellee was something more—he was a pledgee for value; and that one in such position may loan the property pledged, temporarily, to the pledgor, for a particular purpose, and recover in trover, if the property is not returned to him, is settled by this court in the case of *Cooper* v. *Ray*, 47 Ill. 53.

But this was something more than a mere pledge. By the terms of the arrangement made by Dow with the plaintiff, the cattle were to be the property of the plaintiff until Dow repaid the money borrowed. Dow sold and turned out the cattle to plaintiff to secure $85 of borrowed money; they were to be his until Dow refunded the money loaned, and he was to have until the next October in which to pay the money. The cattle were delivered; the possession was changed.

We think the facts show a sale subject to be defeated, and title in the plaintiff.

The judgment is affirmed.

*Judgment affirmed.*