Rapallo, J.
By the proceedings for the acquisition of the land in question, under the act incorporating the Brooklyn and Jamaica Railroad Company (Laws of 1832, chap. 256), ' that company became entitled only to the use of the land for the purpose of operating its railroad. The fee remained in the original owners, subject only to that use, and on the discontinuance of the use, the owners were entitled to resume possession of the land.
This reversion was a valuable interest in the laud, of which the owners could not legally be deprived without compensasation. The conveyance from the railroad company to the city, in pursuance of the act of 1853 (chap. 220), the agreement dated April 10, 1855, and the act of the legislature of April 13, 1855 (chap. 475), were effectual as a relinquishment of the right of the railroad company to the use of the land for the purposes of its incorporation, and as a consent, on its part, that the land be thereafter devoted to the purposes of a public street forever. But they did not and could not operate to divest the owners of the fee of their estate in the land, or of their right to re-enter on the termination or abandonment of its use for railroad purposes. Ho act of the legislature could be effectual for that purpose which failed to provide compensation to the owners of the fee for their interests.
The very instruments under which the city claims to have acquired the title, operated as a discontinuance of the use of the land for railroad purposes, and together with the actual abandonment of that use, by taking up the rails,, etc., conferred upon the owners of the fee the right to re-enter and take possession. The argument that the use of the land as a street was less onerous than its use for railroad purposes, *247 does not answer the objection that the owners of the fee could not be deprived, without compensation, of their right to re-enter, on the termination of the use of the land as a railroad. To authorize that use, after its termination, to be succeeded by a perpetual use for street purposes, is as objectionable on principle as it would have been to take the land originally for a street without providing compensation.
Where a corporation is authorized to acquire land, in fee, either by legal proceedings or by purchase, the property so acquired may, by authority of the legislature, be devoted to a new and different public use, after the use for which it was originally acquired has been terminated; or the land may be aliened by the corporation. In such cases no right of property of any individual is violated. The original owner has received compensation for, or has voluntarily granted, the whole fee, and has no reversionary or other interest in the land. (Heath v. Barmore, 50 N. Y., 302, and cases cited.) But it is otherwise when land has been taken for a particular use only, and that use is discontinued and abandoned.
W e are of opinion that in the present case the city derived no title as against the plaintiffs, from the conveyance by the railroad company, or the legislative acts authorizing that conveyance.
The claim or finding that the land in question was ceded by the trustees of the Cowenhoven estate to the city, for street purposes, is not sustained by any evidence. The deed upon which this finding is based is dated the 6th of May, 1844, and purports, in consideration of five dollars, to convey to the city, in fee, certain parcels of land which had been laid out on the commissioners’ map as streets, including Atlantic avenue from Clermont avenue to a point north-westerly from Hamden street. It was admitted on the trial that Atlantic avenue as laid out on this map, was only seventy feet in width, and was bounded on the south by a strip of land fifty feet wide, being the remainder of the eighty feet strip appropriated and occupied by the Brooklyn and Jamaica ¡Railroad Company, as referred to in the complaint, and that *248 the avenue was duly opened, in accordance with said map, seventy feet wide, bounded on the south by said fifty feet strip. This deed of May 6, 1844, did not embrace any part of the fifty feet strip which is laid out on the map of the opening of the avenue, in evidence in the case, and is the land in controversy in'this action. This strip is in the acts of 1853 and 1855, and in the agreement and conveyance of 1855 described as owned by the railroad company, on the south side of Atlantic avenue, and is conceded to be no part of the avenue.
Neither is there any evidence of a dedication by the Cowenhoven estate to the public, or of a grant to individuals, of any part of the fifty feet strip in controversy. The several deeds from the trustees of the Cowenhoven estate which were put in evidence, conveyed to various individuals lots fronting * either on the Brooklyn and Jamaica turnpike road or on the Brooklyn and Flatbush turnpike road, and running through to the Brooklyn and Jamaica railroad. But the descriptions in these deeds did not include any part of the strip occupied by the railroad, and now in controversy, nor any interest therein; and at the date of these deeds that strip formed no part of Atlantic avenue, or any public highway, but was owned by the Cowenhoven estate, subject to the right of user of the railroad company; and there was no covenant that on the termination of that user the land should be thrown open as a public street, nor any thing from which such a covenant could be inferred. There is no evidence in the case showing that the plaintiffs or their predecessors have done any act divesting or impairing their title to the strip of land in controversy, or that any interest therein has passed from them in any way other than by the hostile proceedings under the act of 1832, set forth in the case, by which it was appropriated to the use of the railroad company for railroad purposes.
This use having been abandoned and discontinued, the property reverted to the original owners, of whom the plaintiffs are admitted to be the representatives.
*249 We think the court erred in dismissing the complaint, and that the judgment should be reversed and a new trial ordered, with costs to abide the event.
All concur.
Judgment reversed.