## Frick Co. v. Oats *et al.*

No. 1868, Okla. T.   Opinion Filed March 12, 1908.

(94 Pac. 682.)

1.   **CHATTEL MORTGAGE—Defects in Filing Cured by Possession.** In an action of replevin, the right of a creditor to the possession of the property in controversy, who holds a chattel mortgage on his debtor's property, good as between the parties, but void as to other creditors, because not filed as required by law, but who has taken possession of the mortgaged property, after condition broken, as security for the debt, with the consent of the mortgagor, is superior, under section 3578, Wilson's Rev. & Ann. St. Okla. 1903, to that of a subsequent execution creditor who has levied upon the same. **Greenville National Bank v. Evans-Snyder-Buell Co.**, 9 Okla. 353, 60 Pac. 249, is overruled.

2.   **COURTS—Stare Decisis—Overruling Decisions.** This court possesses the power under the enabling act and the Constitution

of the state to overrule an erroneous decision of the Supreme Court of the territory of Oklahoma.

(Syllabus by the Court.)

*Error from District Court, Woods County; before J. L. Pancoast, Judge.*

Action in replevin by the Frick Company against D. C. Oats and W. W. Parsons. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*A. H. Noah,* for plaintiff in error.
*Cowgill & Dunn,* for defendants in error.

TURNER, J. This is an action of replevin brought by the plaintiff in error, plaintiff below, against defendants in error, defendants below, in the district court of Woods county, on October 22, 1901, to recover possession, among other things, of a traction engine, an Eclipse thresher, a wind stacker, a sawmill, etc., of the total value of $1,200. On the same day an order of delivery was duly issued and plaintiffs placed in possession of the property, which he has since retained. It seems that on July 10, 1899, one Richard Pearson, being indebted to plaintiff in the sum of about $2,000, made, executed, and delivered to plaintiff a chattel mortgage on the property in controversy, which was never filed as required by law; that said Pearson in August, 1901, after condition broken, turned said property over to plaintiff, who took possession thereof under said mortgage as security for said indebtedness; that while in the possession of said property defendants, who were sheriff and deputy sheriff, respectively, of Woods county, Okla., on October 5, 1901, levied certain executions issued out of a justice of the peace court on said property, and took possession thereof, whereupon plaintiff brought this suit. There was a trial to a jury, and a verdict for defendants, a motion for a new trial, which was overruled, and exceptions taken, a petition in error and case-made duly filed in this court, and the case is now before us on appeal.

The questions we are asked to determine are: Is the verdict sustained by the evidence? Is the verdict contrary to law? If in an action of replevin the right of the creditor to the possession of the property in controversy, who holds a chattel mortgage of his debtor's property, which is void as to other creditors of the debtor because it was not filed, but who has taken possession of the mortgaged property, after conditions broken, as security for the debt, with the consent of the mortgagor, is superior to that of a subsequent execution creditor who has levied upon the same property, then the verdict is not sustained by sufficient evidence, is contrary to law, and the judgment of the trial court should be reversed, otherwise not. Let us see how this is.

In *Greenville National Bank v. Evans-Snyder-Buell Co.*, 9 Okla., 393, 60 Pac. 261, the court says:

"At common law the mortgagee held possession of the property as well as the legal title. If the mortgagor was permitted to retain possession, the conveyance was presumptively fraudulent. The rule at common law has been changed by nearly all of the Western states, so that the legal title to the property remains in the mortgagor, and where the mortgage or statute so provides, the mortgagor may remain in possession, and as a general rule, if the mortgagor remains in possession, the mortgage must be filed, or the mortgagee will not be protected against the creditors of the mortgagor; but, if the mortgagee is in possession of the property, the most of the states protect his rights under his mortage against the mortgagor's creditors."

Cobbey on Chattel Mortgages, speaking of unfiled chattel mortgages (volume 1, § 498), says: "If the mortgagee takes possession of the mortgaged property before any other right or lien attaches, his title under the mortgage is good against everybody, if it was previously valid between the parties"—and authorities cited. Again, in the same section we find: "Where a creditor who holds a mortgage of his debtor's property, which is void as to other creditors of the debtor because it was not filed, takes possession of the mortgaged property, with the consent of the debtor, as security for the debt, he may still, as against other creditors, hold the property as pledgee. * * * If a mortgagee takes

possession of the mortgaged chattels before any other right or lien attaches, his title under the mortgage is good against everybody, if it was previously valid between the parties, although it be not acknowledged and recorded, or the record be ineffectual by reason of some irregularity. The subsequent delivery cures all such defects, and the mortgagee's right of possession is good against the world. * * * "—citing numerous authorities. *Bank v. Damm,* 63 Wis. 249, 23 N. W. 497.

Hammon on Chattel Mortgages, p. 82, says: "If the mortgagee takes possession of the mortgaged property with the consent of the mortgagor before any other right or lien attaches, it will cure the invalidity arising from omission to record the instrument"—citing authorities. The same author on page 225 says: "As between the parties to the contract recordation is therefore unnecessary. Either party may enforce his rights without regard to whether the instrument has been recorded"—citing a number of authorities.

That this doctrine is sustained by an overwhelming weight of authority there can be no question, and it would seem that in all the states unfiled chattel mortgages, executed in good faith and good as between the parties on the point in question, stand on a common footing. That such mortgages are good as between the parties has always been held in Arkansas, and such is also the rule in Oklahoma. *Strahorn-Hutton-Evans Com. Co. v. Florer & Bannerman,* 7 Okla. 499, 54 Pac. 710. In *Evans-Snyder-Buell Co. v. McFadden,* 105 Fed. 293, 44 C. C. A. 496, 58 L. R. A. 900, the court said:

"Prior to the adoption of the chapter concerning mortgages as the law in the Indian Territory, it has been decided by the Supreme Court of Arkansas in *Main v. Alexander,* 9 Ark. 112, 47 Am. Dec. 732, that by force of Mansfield's Digest §§ 4742, 4743, a mortgage on personal property executed in that state was good as between the parties thereto, though not acknowledged and recorded; but that it constitutes no lien upon the mortgaged property as against strangers.* * * "

See, also, *Hannah v. Carrington,* 18 Ark. 105; *Jackoway v.*

*Gault,* 20 Ark. 190, 73 Am. Dec. 494; *Carroll v. Duval,* 22 Ark. 142; *Jarratt v. McDaniel,* 32 Ark. 602; *Haglin v. Rogers,* 37 Ark. 496; *Watson v. Thompson,* 49 Ark. 84-281, 4 S. W. 62.

But it is contended in the case at bar that section 3578, Wilson's Rev. & Ann. St. Okla. 1903, which reads as follows: "A mortgage on personal property is void as against creditors of the mortgagor, subsequent purchasers, and incumbrancers of the property in good faith, for value, unless the original, or an authenticated copy thereof, be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at the time situated * * * *"— renders the chattel mortgage under consideration absolutely void as against the execution creditors in this case. To sustain this contention defendants in error rely on the case of *Greenville National Bank v. Evans-Snyder-Buell Company, supra,* where the opinion construing this statute, and seeming to establish a contrary rule (same page), reads as follows:  •

"These rules, however, may be changed or modified to any extent by statutes. The statutes of nearly all the states, like those of Kansas, provide that 'every mortgage, or conveyance intended to operate as a mortgage, of personal property, which shall not be accompanied by an immediate delivery, and be followed by an actual or continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be forthwith deposited in the office of the register of deeds in the county where the property shall then be situated.' Oklahoma has gone one step further, and ignored the question of possession of the mortgagee. The fact that the mortgagee is in possession, if the mortgage is not properly filed, will not protect the mortgagee against attaching creditors of the mortgagor. . The statute in positive terms provides that 'a mortgage of personal property is void against creditors of the mortgagor and subsequent purchasers and incumbrancers of the property in good faith for value, unless the original, or an authenticated copy thereof, be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at

the time situated.' From this section it will be seen that posses-
sion alone will not suffice."

The section thus construed by the learned court in that case
was in force in Dakota when the states of North and South Da-
kota were formed and was adopted by each of them when organ-
ized, and put in force and was operative in the territory of Okla-
homa December 25, 1890. Had the courts of any of the Dakotas
so construed this statute, we might feel constrained to do likewise;
but in view of the fact that no such construction has been placed
upon it by any of those courts, either before or since its adoption
into the territory of Oklahoma, so far as we are advised, and in
view of the further fact that said construction stands wholly un-
supported by authority cited, we are of the opinion that the same
should not be permitted to stand as a precedent for this court to
be governed by. We are further of the opinion that the statute
will not fairly bear the construction placed upon it, and instead
of the territory of Oklahoma having gone "one step further" in
legislation upon this subject, as intimated in that opinion, we
think that the court simply went "one step further" than it should
have gone in construction.

Let us see how other states have construed similar statutes.

1 Hills Annotated Statutes and Codes of Washington provide:

"Sec. 1648: A mortgage of personal property is void as
against creditors of the mortgagor or subsequent purchasers and
incumbrancers of the property for value and in good faith, unless
it is accompanied by the affidavit of the mortgagor that it is made
in good faith and without any design to hinder, delay or defraud
creditors, and it is acknowledged and recorded in the same manner
as is required by law in conveyance of real property."

It will be noted that this statute and ours are practically
identical until the word "unless" is reached in each of them. In
our statute the mortgage is declared void "unless" the original or
a copy is properly filed. In this statute, in addition to being
properly recorded, it must be accompanied by a certain affidavit.
Now the Supreme Court of the territory of Washington held in
*Marsh v. Wade*, 1 Wash. St. 538, 20 Pac. 578, in effect, in con-

struing this statute, that, although the chattel mortgage in question was not acknowledged and recorded as required by law, the mortgagee, having taken possession of the mortgaged property before the same was levied on by the sheriff under certain writs of execution, had a right to the possession of it against the world, and in support thereof quoted Jones on Chattel Mortgages, § 178, and authorities there cited.

The Civil Code of California (section 2957) is in like manner identical with ours, and renders the mortgage "void as against creditors of the mortgagor and subsequent purchasers and incumbrancers of the property in good faith and for value, unless" recorded and accompanied by a certain affidavit, as in the case of the Washington statute, *supra*. In *Adlard v. Rogers,* 105 Cal. 327, 38 Pac. 889, the mortgage was executed and accompanied by an affidavit in due form, as required by section 2957 of the Civil Code, but was not acknowledged, proved, or certified as therein required. It was recorded. The mortgagors remained in possession for some time thereafter, when the mortgagee took possession, after which it was attached by creditors. The court in the syllabus said:

"A chattel mortgage which is defective in not being acknowledged or proved and certified as provided by section 2957 of the Civil Code is void as against an attaching creditor of the mortgagors, unless the mortgagee has reduced the property to possession prior to the attachment."

See, also, *Lemon v. Wolff et al.,* 121 Cal. 272, 53 Pac. 801.

We have reason to believe that this Washington statute and the statutes of the Dakotas, which are *verbatim,* were modeled after this statute of California. As stated, our statute was adopted from South Dakota, and inasmuch, then, as none of the Dakotas have construed this statute, so far as we are advised, with regard to the point in question, and California has done so in construing a statute which appears to have been the model for them all, while we are certainly not bound thereby, we feel that the construction thus given to the California statute is in the highest degree persuasive with this court.

Although the Kansas statute quoted above provides that "every mortgage * * * of personal property which shall not be accompanied by an immediate delivery, and be followed by an actual or continued change of possession of the things mortgaged, shall be absolutely void as against the creditor of the mortgagor, * * * " yet the Kansas courts have uniformly held that where the requirements of the statute were not observed as to immediate delivery and continued change of possession of the things mortgaged, and for that reason the mortgage was void, yet, where the mortgagee subsequently took possession of the mortgaged property by consent of the mortgagor, the mortgage thereby became immediately valid as against the creditor of the mortgagor and subsequent purchasers and mortgagees in good faith; and it would seem from the case next cited that other states having a similar statute have given it a like construction. In *Cameron-Hull Co. v. Marvin,* 26 Kan. 612, where this statute was under construction, and where it was held that the mortgages were void because the mortgagees did not comply with the statute, in that they did not deposit their mortgages in the office of the register of deeds, or take and retain possession of the mortgaged property, yet the court said: "We now come to the question, Did the mortgages become valid when the plaintiffs took possession of the property under them? We think we must answer this question in the affirmative. *Dayton v. Savings Bank,* 23 Kan. 421; *Savings Bank v. Sargent,* 20 Kan. 576; *Nash v. Norment,* 5 Mo. App. 545; *Eastman v. Water Power Co.,* 24 Minn. 437; *Reed v. Feikert,* 68 Ill. 206; *McTaggert v. Rose,* 14 Ind. 230; *Brown v. Platt,* 8 Bosw. (N. Y.) 324; *Brown v. Webb,* 20 Ohio, 389; *Chapman v. Weimer,* 4 Ohio St. 481; *Field v. Baker,* 12 Blatchf. (U. S.) 438, Fed. Cas. No. 4,762"—and cites Jones on Chattel Mortgages, § 178, which reads as follows:

" * * * If a mortgagee takes possession of the mortgaged chattels before any other right or lien attaches, his title under the mortgage is good against everybody, although it be not acknowledged and recorded, or the record be ineffectual by reason of any irregularity. The subsequent delivery cures all such defects, and

it cures any defects there may be through an insufficient description
of the property.  *   *   *   Delivery of possession under a mort-
gage before rights have been acquired by others will cure any in-
validity there may be in the instrument, whether arising from an
insufficient execution of it, omission to record it, or from its con-
taining a provision which makes it void except as between the
parties."

Thus it will be seen that the Kansas courts and numerous
others, notwithstanding the "immediate delivery" clause in their
statute, have held with the great weight of authority on this point.

The statutes of Arkansas extended and put in force in the In-
dian Territory on the subject of chattel mortgages, bearing on
the question in controversy (Mansfield's Digest) read as follows:

"Sec. 4742.  All mortgages, whether for real or personal
estate, shall be proved and acknowledged in the same manner that
deeds for the conveyance of real estate are now required by law
to be proved or acknowledged; and when so proved or acknowl-
edged shall be recorded—if for lands, in the county or counties
in which the lands lie, and, if for personal property, in the county
in which the mortgagor resides.

"Sec. 4743.  Every mortgage, whether for real or personal
property, shall be a lien on the mortgaged property from the time
the same is filed in the recorder's office for record, and not before;
which filing shall be notice to all persons of the existence of such
mortgage."

"Sec. 4750.  Whenever any mortgage or conveyance, intended
to operate as a mortgage of personal property,  *   *   *   shall be
filed with any recorder in this state upon which is endorsed the
following words:  'This instrument to be filed but not recorded,'
*   *   *  .is shall be a lien on the property therein described from
the time of filing and the same shall be kept there for the inspec-
tion of all persons interested; and said instrument shall be thence-
forth notice to all the world of the contents thereof without fur-
ther record except as hereinafter provided.

"Sec. 4751.  Every mortgage so endorsed and filed shall be
void as against the creditors of the person making the same, or
against subsequent purchasers or mortgagees in good faith, after
the expiration of one year after the filing thereof, unless  *   *   *."
[Ind. T. Ann. St. 1899, §§ 3053, 3054, 3061, 3062.]

Under this statute it has been uniformly held, as in *Applewhite v. Harrell Mill Co.*, 49 Ark. 279, 5 S. W. 292, in speaking of chattel mortgages not filed:

"But this would not render it a nullity. It was a valid security between the parties nevertheless .and, after condition broken, as between them became a legal title (*Haskell v. Seiver*, 25 Ark. 152), and when the mortgagees took possession of the mortgaged property by virtue of it they had the same right to hold it against the subsequent attachment of the appellees that any preferred creditor has to retain the property of his debtor that has been delivered to him by the debtor in pledge or payment of his debt. Taking possession by the mortgagees by virtue of the mortgage was an appropriation by them of the mortgaged property to the mortgage debt with the debtor's consent, and their title was good against subsequently acquired rights."

Jones on Chattel Mortgages, § 178; *Frank v. Miner*, 50 Ill. 444; *Hauselt v. Harrison*, 105 U. S. 401, 26 L. Ed. 1075; *Petring v. Herr Dry Goods Co.*, 90 Mo. 649, 3 S. W. 405.

In *Garner v. Wright*, 52 Ark. 385, 12 S. W. 785, 6 L. R. A. 715, the court said:

"Under our law, if a mortgagee take possession of the mortgaged chattels before any other right or lien attaches, his title under the mortgage is good against everybody, if it was previously valid between the parties, although it be not acknowledged and recorded. The delivery cures all such defects."

Jones on Chattel Mortgages, § 178, and cases cited; *Applewhite v. Harrell Mill Co.*, 49 Ark. 279, 5 S. W. 292; *Cameron v. Marvin*, 26 Kan. 625; *Hutton v. Arnett*, 51 Ill. 198.

See, also, *Rainwater-Boogher Hat Co. v. Malcolm*, 51 Fed. 734, 2 C. C. A. 476, where the court said: "Actual possession of mortgaged chattels by the mortgagee before the rights of the third parties have intervened dispenses with the necessity of acknowledging the mortgage"—citing numerous authorities.

Thus it will be seen that up to the time of the admission of this state into the Union the territory of Oklahoma and the Indian Territory, respectively, had in force the statutes cited, *supra*, the courts of one construing the Oklahoma statute as laid down in *Greenville National Bank v. Evans-Snyder-Buell Co.*, 9 Okla. 393,

60 Pac. 249, *supra,* the courts of the other construing the Indian Territory statute as laid down in *Garner v. Wright,* 52 Ark. 385, 12 S. W. 785, 6 L. R. A. 715, *supra,* and numerous other cases, and that, too, under statutes of like import on the question involved in this suit; and it is for us now to determine which of the two is the correct doctrine and which shall govern the contruction of section 3578 of Wilson's Revised and Annotated Statutes of Oklahoma of 1903 put in force throughout this state by the terms of the enabling act and the Constitution. In support of the rule laid down in *Greenville National Bank v. Evans-Snyder-Buell Co., supra,* our attention has been called to *Cornelius v. Boling et al.,* 18 Okla. 469, 90 Pac. 874. In that case a mortgagee of an unfiled chattel mortgage took possession of the mortgaged property after condition broken, and advertised and bid it in at a mortgage sale. Prior to the sale he received notice that the mortgagor had filed his voluntary petition in bankruptcy. A few days thereafter a trustee in bankruptcy was appointed of the estate of the mortgagor, and made demand of the mortgagee for the mortgaged property, which demand being refused the trustee sued the mortgagee to recover the value thereof. In its opinion the court said:

"The mortgage, being void as to creditors, * * * could not be revived as to them by taking possession under it, and, if it might be, probably its force and effect would be avoided by reason of the provisions of the bankrupt act of 1898, as such right would be a preference acquired less than four months before the commencement of the bankruptcy proceedings."

It will be readily seen that the construction of the statute in question was not necessarily involved in the determination of the question as to whether or not the mortgagee, by taking possession of the property, had acquired a preference within four months of the commencement of the bankruptcy proceedings. It was therefore a mere *dictum* by which this court will not be bound.

This leaves the rule as laid down in *Greenville National Bank v. Evans-Snyder-Buell Co.* standing alone and unsupported in the jurisprudence of this state and the jurisprudence of the Dakotas

having identical, and California and Washington having similar, statutes, and the question is whether it shall stand or be overruled by this court. In support of the contention that it should stand it might be urged that on admission of this state into the Union we adopted the statute in question from the territory of Oklahoma, together with the construction placed upon it by the Supreme Court of that territory in the case of *Greenville National Bank v. Evans-Snyder-Buell Co.*, and for that reason we are bound to follow it as a rule of construction in this case under the well-established rule that, where one state has adopted a statute from another state which has received a known and settled construction, the construction must be deemed to have been adopted, together with the text which is expounded. Let us see if this rule is applicable to this case. The enabling act provides:

"Sec. 18. The Supreme Court or other court of last resort of said state shall be deemed to be the successor of said territorial appellate courts and shall take and possess any and all jurisdiction as such, not herein otherwise specifically provided for, and shall receive and retain the custody of all books, dockets, records and files not transferred to other courts. * * * *"

"Sec. 21. * * * And all laws in force in the territory of Oklahoma at the time of the admission of said state into the Union shall be in force throughout said State, except as modified or changed by this act or by the Constitution of the state. * * * *"

The act approved March 4, 1907, amends so as to read:

"Sec. 17. That all cases, proceedings and matters civil or criminal, pending in the Supreme Court of the territory of Oklahoma or in the United States Court of Appeals in the Indian Territory * * * shall be proceeded with, held and determined by the Supreme Court or other final appellate court of such state as the successor of said Supreme Court of the territory of Oklahoma and of the United States Court of Appeals in the Indian Territory. * * * *"

The schedule of the Constitution says:

"In order that no inconvenience may arise by reason of the change from the forms of government now existing in the Indian Territory and in the territory of Oklahoma, it is hereby declared as follows:

"Section 1. No existing rights, actions, suits, proceedings, contracts or claims shall be affected by the change in the forms of government, but all shall continue as if no change in the forms of government had taken place.

"Sec. 2. All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, are hereby extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law."

Now, construing this preamble and these sections of the schedule together, it is evident that, as it was intended that *"no inconvenience* arise by reason of a change from the forms of government now existing in the Indian Territory and in the territory of Oklahoma," it was carefully provided that "no existing rights, actions, suits," or "proceedings" "shall be" thus "affected," "but all shall continue as if no change in the forms of government had taken place," it would be incongruous with the spirit of those provisions to hold that, as this appeal was perfected to the Supreme Court of Oklahoma Territory before the admission of this state into the Union, at which time that court was not bound by the construction laid down in that case, and could overrule the same if erroneous; that since statehood this litigant has lost that right; and that owing to the change in the forms of government this court, although successor of that court, had not that power, and could not, if it would, do the same thing. This, in effect, it would be compelled to hold if the construction laid down in that case is binding on this court.

We also take the true intent and meaning of section 2 of the schedule and section 21 of the enabling act, when construed together, to be that on the admission of this state into the Union the laws in force in the territory of Oklahoma at that time "remain in force," and are not adopted from anywhere. While this would appear to be in no need of authority to sustain it, we call attention to *State of Washington v. Ellis et al.*, 22 Wash, 129, 60 Pac. 136. In that case the defendants were indicted for robbery.

Frick Co. v. Oats *et al.*

During the trial one of the jurors was taken sick, and, on stipulation of counsel, the case was proceeded with before 11 jurors, and resulted in a verdict of guilty. Defendants filed a motion to set aside the verdict and for a new trial upon the ground that the verdict rendered by a jury of 11 men was void. The court sustained the motion, and granted a new trial, for the reason that defendants could not waive a constitu'ional right of a trial by 12 jurors. The state excepted and appealed. The Supreme Court said:

"It is contended by appellant that this procedure is justified by the sections of the law enacted in 1854, which provides that a defendant and a prosecuting attorney, with the assent of the court, may submit the trial to the court, except in capital cases. Respondents insist that a law of this character in the territory of Utah has been pronounced unconstitutional by the Supreme Court of the United States, as being in contravention of the seventh amendment of the Constitution of the United States (reported in the case of *Thompson v. Utah,* 170 U. S. 343, 18 Sup. Ct. 620, 42 L. Ed. 1061); but the appellant in his reply brief insists that, inasmuch as this law was on the statute books at the time of the adoption of our Constitution, under the provisions of article 27, § 2, of the Constitution, which provides that the laws which are now in force in the territory of Washington which are not repugnant to the Constitution shall remain in force until they expire by their own limitation, or are repealed by the Legislature, these laws became incorporated into our laws, and must be considered as valid, existing, constitutional law until it has been declared to be unconstitutional by competent judicial authority, and that, inasmuch as the Utah case was not decided until after the adoption of our Constitution, and the said similar act in Utah had not been adjudicated to be invalid until after that time, it must be held to have been the intention of our constitutional convention to re-enact the laws of the territory of Washington which are not repugnant to our own Constitution, and that law is, in effect, a re-enacted law. But we hardly think this rule of construction sound. Section 2 of article 27 could not be construed as re-enacting a statute, as all the force it had was to continue in force all valid laws which were then in existence."

If, then, article 27, § 2, of the Constitution of Washington, which provides as follows: That all laws which are now in force

in the territory of Washington which are not repugnant to the Constitution shall remain in force until they expire by their own limitation, or are repealed by the Legislature—"could not be construed as re-enacting a statute, as all the force it had was to continue in force all valid laws which were then in existence," we must conclude that that part of our schedule, which is practically the same in substance and reads: "Sec. 2. All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitations, or are altered or repealed by law"—is entitled to a like construction; that is: that "all laws in force in the territory of Oklahoma at the time of the admission of the state into the Union * * * shall be extended to and remain in force" upon the admission of the state into the Union. Clearly these laws cannot be said to be adopted or re-enacted from anywhere but were already "in force." If, then, they were not adopted or re-enacted, but remained "in force," this statute would not carry with it the construction placed upon it in *Greenville National Bank v. Evans-Snyder-Buell Co., supra,* so as to be binding on this court under the well-recognized rule aforesaid.

Very different indeed is the intent of the act of Congress of May 2, 1890, which reads "that certain general laws in the state of Arkansas * * * are hereby extended over and put in force in the Indian Territory, * * * *" naming certain chapters of Mansfield's Digest, construing which the courts have held,[1] in effect, that with the laws thus adopted from Arkansas was, at the same time, adopted the construction placed upon them at the time by the Supreme Court of Arkansas. *Sanger v. Flow,* 48 Fed. 152, 1 C. C. A. 56; *Appolos et al. v. Brady et al.,* 49 Fed. 401, 1 C. C. A. 299; *Zufall v. United States,* 1 Ind. T. 639, 43 S. W. 760. And we are not unmindful that this court has so held in *National Live Stock Commission Co. et al. v. W. N. Taliaferro et al.,* 93 Pac. 983, handed down at the present term of this court (reported in

this volume); but we draw this distinction—that the laws "in force" in the territory of Oklahoma remained in force and did not pass to the state of Oklahoma by adoption as they did by virtue of the act of May 2, 1890, which put certain laws from Arkansas "in force" in the Indian Territory, for the reason that the state of Oklahoma is the successor of the territory of Oklahoma by virtue of the terms of the enabling act and the Constitution, and, as such, succeeded to its laws on the admission of the state into the Union, while the Indian Territory and the state of Arkansas stood in no such relation, the one being a sovereign state, and the other an unorganized territory of the United States. Neither do we regard *Greenville National Bank v. Evans-Snyder-Buell co., supra.*, as *stare decisis.*

In 26 Am. & Eng. Enc. of Law, 160, we find:

"The doctrine of *stare decisis* owes its origin and observance to the recognition of the necessity for stability and uniformity in the construction and interpretation of the law. It is too evident to require discussion that the interest of the state and of the individual and proper administration of justice require that there should be settled rules in these matters. The application of the doctrine necessarily cannot be according to fixed rules, but must be determined in each case by the discretion of the court."

The same author on page 167 says:

"Distinction has also been drawn in the application of the doctrine of *stare decisis* where only one decision is relied upon as establishing a doctrine. For a variety of reasons a series of decisions will be given more weight than a single decision. There is less likelihood of error. Any points, decisions, or statutes overlooked in the one may be considered in subsequent cases. The probability of an injurious effect on property rights is less where there is a single decision than where there is a series."

In *Hihn v. Courtis*, 31 Cal. 403, the court said:

"There is a class of cases, undoubtedly, which the same or a subsequent court would be fully justified in overruling, and which often are overruled—cases hastily and clearly erroneously decided, under which no valuable rights can grow up, and the overruling of which would produce no inconvenience—recent cases under

which valuable rights have not yet been acquired, which stand alone or nearly alone, and which are manifestly erroneous and are themselves departures from the law, as before well settled."

In *Frink v. Darst*, 14 Ill. 311, 58 Am. Dec. 575, the court quoting from *Bowers v. Green*, 1 Scam. (Ill.) 43, says:

"For our own convenience, as well as for the sake of uniformity of decision, we are always disposed to follow the precedents which our predecessors have given us; but where in those precedents we find, as will be always found in the adjudications of the most vigilant and enlightened judges, occasional aberrations from the settled rules and reasons of the law, we feel it our duty to depart from them. A solitary decision has never been held to change the law in any case, and much less ought it to have that effect in a case like the present, where the rule is so well calculated for the attainment of justice, and so firmly established by an uniform train of uncontroverted authorities."

In *Harvey v. Traveler's Insurance Company*, 18 Colo. 357, 32 Pac. 936, the court says:

"The maxim *stare decisis* is one of great importance in the administration of justice, and ought not to be departed from for slight or trival causes. Yet this rule has never been carried so far as to preclude courts from investigating former decisions, when the question has not undergone repeated examination and become well settled."

In *Paul v. Davis*, 100 Ind. 427, the court, quoting from *Hart v. Burnett*, 15 Cal. 530, said:

"But it is a solecism to say that causes should be tried upon wrong principles—be decided against the law—whether it be for the purpose of justice or not so to decide them. The law is not so false to itself as to require its own permanent overthrow, unless the supervision be necessary to the public interests; and whether it be so necessary in given cases or not is for the court to decide, as a matter of legal discretion, wherever the rule is invoked."

Continuing, the court said:

"Much as we respect the principles of *stare decisis*, we cannot yield to it, when to yield is to overthrow principles and do injustice. Reluctant as we are to depart from former decisions, we

cannot yield to them, if, in yielding, we perpetrate error and sacrifice principle. We have thought it wisest to overrule outright rather than to evade, as is often done, by an attempt to distinguish where distinction there is none."

In 1 Kent's Com. 477, the Lord Chancellor of England said to the House of Lords:

"You are not bound by any rule of law which you could lay down, if upon a subsequent occasion you should find reason to differ from that rule. That is like every court of justice, and I regard this as a court of justice. It is inherent in the nature of every court of justice that it should have liberty to correct any error into which it may have fallen."

In *Leavitt v. Blatchford,* 17 N. Y. 533, the court said:

"I appreciate the value of the maxim *stare decisis.* There are cases in which its authoritative application should shut out all discussion. The doctrine on this subject is nowhere better stated than by Judge Selden, in his dissenting opinion in *Curtis v. Leavitt,* 15 N. Y. 247, where he says: 'It is indispensable to the due administration of justice, especially by a court of last resort, that a point once deliberately decided be considered as settled and closed to further argument.' To this I agree. When a question has been well considered and deliberately determined, whatever might have been the views of the court, if permitted to treat it as *res nova,* the question should not again be disturbed or unsettled. On the other hand, I hold it to be the duty of this court, as well as every other, freely to examine its own decisions. An acknowledged error must be more venerable and more inveterate than it can be made by any series of mere concessions or extrajudicial resolutions, or even by any single decision, before it can claim immunity upon the principles of *stare decisis. Stevens v. Pratt,* 101 Ill. 214.   *   *   *"

"It is going quite too far," said Mr. Justice Bronson, in *Butler v. Van Wyck,* 1 Hill (N. Y.) 462, "to say that a single decision of a court is absolutely conclusive as a precedent. It is an elementary principle that an erroneous decision is not bad law. It is no law at all. It may be final upon the parties before the court, but it does not conclude other parties having rights depending upon the same question."

Believing as we do that this court by virtue of section 18 of the enabling act and section 17 of the act amendatory thereto, approved March 4, 1907, is the successor of the Supreme Court of the territory of Oklahoma and the United States Court of Appeals in the Indian Territory, and, as such, it is not only within the power, but is the duty of this court, to overrule the decisions of the Supreme Court of the territory of Oklahoma when erroneous, and note *stare decisis* that the construction placed on the statute in question by that court in *Greenville National Bank v. Evans-Snyder-Buell Co.,* 9 Okla. 393, 60 Pac. 249, is clearly erroneous and unsupported by authority, and therefore not binding on this court, we are constrained to overrule the same upon the point in question, and declare the law to be in accordance with the authorities cited, *supra;* that is to say that in an action of replevin the right of the creditor to the possession of the property in controversy who holds a chattel mortgage on his debtor's property, good as between the parties, which is void as to other creditors because it was not filed as required by law, but who has taken possession of the mortgaged property after condition broken as security for the debt, with the consent of the mortgagor, as in this case, is superior to that of a subsequent execution creditor who has levied upon the same property, and therefore the judgment of the district court of Woods county is not sustained by sufficient evidence, is contrary to law, and is reversed and remanded, with directions to enter judgment in favor of the plaintiff in error in accordance with this opinion.

Williams, C. J., and Hayes and Kane, JJ., concur; Dunn, J., disqualified.