EZRA C. READ *et al.,* Appellants, *v.* JOHN L. WILSON, Appellee.

### APPEAL FROM COOK.

A chattel mortgage which authorizes the mortgagor to retain possession of the property, to use and enjoy the same, according to the usual course of retail trade, is not good—but if it authorizes possession of the goods to be taken, and possession is taken under the power, the possession so taken is not vitiated, because of the vicious provision in the mortgage.

The fact that the mortgagors were continued in the store, under their old sign, and sold goods, for the benefit of the mortgagees, will not destroy the apparent good faith of the transaction.

THIS was an action of replevin for twenty gold watches and twelve silver watches, valued at $2,500.

Writ issued December 12, 1857, and served December 15, 1857, and property delivered plaintiffs.

Declaration filed, claiming above property.

Defendant pleaded: 1st, Property in himself; 2nd, That he took the property, as sheriff of Cook county, by virtue of an execution directed to him from Cook County Court of Common Pleas, dated December 11th, 1857, against R. W. Roath, impleaded with W. Tyler Roath; 3rd, Property in said Roaths.

Replication: first, That said property was plaintiffs'; secondly, That defendant was not sheriff; thirdly, That it was the property of plaintiffs and not of Roaths.

A jury was waived. Trial by court, and judgment for defendant.

There was a chattel mortgage of property in question, made by the two Roaths to plaintiffs, dated October 23, 1857, duly acknowledged and recorded, November 20, 1857, made to secure a promissory note for $8,000, of same date as mortgage given by the Roaths to plaintiffs, due six months after its date. Mortgage provides that mortgagors should have possession of property mortgaged for two years from the date of the instrument, and use and enjoy the same according to the usual course of their retail trade, unless mortgagees should deem the property mortgaged in danger of being sold, removed, or wasted; then the note secured by said mortgage should become due, and they might in person, or by their agents, take, and hold possession of said property.

It was admitted this mortgage was executed and recorded before the execution under which the levy was made by defendant, was delivered to him, in favor of C. V. Wiley against R. W. Roath, impleaded with W. T. Roath; a valid judgment on which this execution was issued, also admitted.

25

Defendant objected to introduction of mortgage; objection overruled and mortgage admitted, and read in evidence. Exception taken.

Plaintiffs then offered *R. W. Roath,* one of the mortgagors, as a witness, who testified as follows:

I know the parties to this suit; plaintiffs live in New York city; I carried on the jewelry business at No. 81 South Clark street, in the city of Chicago, Illinois, where we had the stock of goods covered by the mortgage made by me and my son to the plaintiffs; about the first of November, 1857, Charles W. May, as agent for the plaintiffs, came from New York city, to take possession of the goods, store and business under the mortgage; he remained in Chicago until about the 25th of March, 1858; on his arrival he proceeded to take an inventory of all the goods and effects in the store; this was before the issue or levy of the execution of C. V. Wiley against me; May was in the store the day the execution was levied, but had gone to his dinner at the precise time of the levy; the goods in the store were the same included in the mortgage, and were levied on by the sheriff; after his arrival, Mr. May received the proceeds of all the sales made in the store, and they were deposited in the Marine Bank, to the credit of Read, Taylor & Co., these plaintiffs; after his arrival he had the sole control and direction of the business, and forwarded weekly statements of the business to Read, Taylor & Co., at New York; he took and held this possession on account of plaintiffs; at the time of making the mortgage we were indebted to plaintiffs about $8,000, and so continued at the time of levying the execution; Mr. May came to Chicago entirely to look after and see to Read, Taylor & Co.'s interest in this property, and to take possession of the same.

On cross-examination, witness testified that he had done business at 81 Clark street for one year and a half, under sign of R. W. Roath & Son, on a sign board and clock; did not remove signs after making mortgage; no advertisement of change of possession in papers, subsequent to the execution of the mortgage; myself and two sons were employed in the store prior to the date of the mortgage; no one else; I hired no one else after Mr. May came, and I and my sons remained in possession as before, selling goods under direction of Mr. May; he sold many goods, and we all received money and put in the drawer; we retained of proceeds enough to pay expenses of store and our living, or personal expenses, by consent of May; James and Tyler (my sons) slept at store, and had keys of store; I also had keys; one of my boys was in the store all the time; Mr. May did not sleep in the store; he came there in the morning as soon as I

did; did not stay there evenings generally; he sold but few goods in the evening; the day before levy was made we sold Mr. Hyatt (attorney for plaintiff in execution, and for defendant in this suit) some goods; a few to settle an account; his account against us was about $80—ours against him between $60 and $70, balance about $22; I think I consulted Mr. May about propriety of paying Hyatt's account before I paid it; Mr. May was not in store when levy was made, he had gone to his dinner; James Roath was there; we had a lease of the store; no transfer was made of it. Mr. May paid the rent himself, to Dr. Quinlan, our landlord, and had the direction of paying the rent; he paid the rent for November and December for account of Read, Taylor & Co. last, and paid all the other bills against the store; we paid no other debts than to Read, Taylor & Co. after May's arrival, except a few small ones by his consent.

Defendant then called *L. H. Hyatt* as a witness, who testified: the transaction referred to, took place the day I presented my bill to Roath; balance, I think, of $22; he said that he had no money, but that if I wanted anything out of the store I could have it; he went to the desk and got ledger; I am perfectly certain he did not leave the show case till after he sold me the goods; I saw Mr. May in the store; he was at the desk; Roath did not consult him.

Cross-examined. After I went in, Roath went back to the desk to get his ledger; I cannot state that he did not speak to May; I had presented my bill to him before he went to the desk; I heard that May was there and went partly to find out how the business was done, but principally to get my pay.

Defendant then offered in evidence, execution from Cook County Court of Common Pleas, in favor of C. V. Wiley against R. W. Roath, impleaded, etc., dated December 11th, 1857, delivered to defendant December 11th, 1857, by virtue of which, defendant took property in question, which it is admitted were a part of those mortgaged to plaintiffs by the Roaths.

Plaintiffs offered replevin writ in evidence, with return thereon.

The court found issues for the defendant, and rendered judgment accordingly; plaintiffs excepted.

Plaintiffs below, appellants, assign for error: the court erred in rendering judgment for defendant; the court erred in not rendering judgment for plaintiffs.

SCAMMON & FULLER, for Appellants.

L. H. HYATT, for Appellee.

CATON, C. J.    The clause in this mortgage, allowing the mortgagors to retain possession of the stock of goods and to sell them, is substantially like that in the case of *Davis* v. *Ransom,* 18 Ill. R. 396, and must be held not sanctioned by our statute relating to chattel mortgages, so as to protect the mortgagees against subsequent creditors and purchasers, while the mortgagor is allowed to continue in the possession of the property. The clause allowing the mortgagor to retain possession is inadequate to the purpose designed, and so far as it was designed to effect that purpose, it was fraudulent and void, as to subsequent creditors and purchasers.    A chattel mortgage without the provision dictated by our statute, authorizing the mortgagor to retain possession is held to be fraudulent, if the mortgagor continues in the possession, and so it must be held in relation to this mortgage, which must be treated the same as if this mortgage contained no clause authorizing the mortgagor to retain the possession, for the clause in this mortgage, was not sufficient to justify such a course.    Such possession was fraudulent under this mortgage.    This reduces the inquiry to the simple question of the transfer of the possession from the mortgagor to the mortgagee, under the mortgage, for if there was such a transfer of the possession before the rights of creditors actually intervened, at the moment of such transfer of the possession, that clause become a dead letter in the mortgage.    It was void before and it was void still.    Because that clause could not justify the possession by the mortgagor.    Such possession while it continued, was fraudulent.    The fraud, whatever there was, consisted in the possession by the mortgagor, rather than in the clause in the mortgage which attempted to authorize such possession.    Had the mortgagees taken possession of the goods, under the mortgage, at the time the rights of the judgment creditor intervened?    Upon an examination of the evidence in this case, we are satisfied they had.    Indeed the evidence on that subject is all one way.    The mortgagees residing in New York, sent their agent to Chicago, for the express purpose of taking possession of the goods and disposing of them, in satisfaction of their debt, under another clause in the mortgage.    This agent did take possession of the goods, according to the undisputed evidence.    He acquired and continued in, the absolute and undisputed dominion of the goods, sold them from day to day, to customers, as opportunity offered, and deposited the money in bank to the credit of the mortgagees, except the amount required for incidental expenses, in carrying on the business. It is true he continued the mortgagors in the store to assist him in the sale of the goods, but we know of no law which forbids this.    Indeed it was very proper that he should do so, for they,

it must be presumed, were better qualified to assist him in the advantageous sale of the goods than any strangers could be. They were acquainted with the business, and with the customers of the establishment, and were particularly desirable as servants in the business.   We cannot doubt from the proof, that they were nothing else.   Indeed, the only fact in the whole case which we think worthy of any serious consideration as tending to a contrary conclusion is, that the sign of the mortgagors was continued over the door of the house, after the possession was taken and while the business was continued by the agent of the mortgagees.   But this fact is by no means absolutely inconsistent, with a *bona fide* change of possession.   It may have been accidental or from inadvertence, or it may have been under the belief, that an old and well known sign, would draw customers, who were in the habit of trading with the mortgagors, and hence continued with upright intentions.   At any rate, we do not think that that fact alone, should control the case, in despite of the positive and unsuspicious testimony, that the possession was absolutely taken and continued, by the agent of the mortgagees.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*