## Case No. 4,762.

FIELD v. BAKER et al.

[12 Blatchf. 438;[1] 11 N. B. R. 415.]

Circuit Court, E. D. New York. Feb. 9, 1875.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

Thorndike Saunders, for plaintiff.
Tracy, Catlin & Brodhead, for defendant Baker.

WOODRUFF, Circuit Judge. On the 1st of April, 1871, the appellant, Adolph Baker, sold to the other defendant, Harris Fiegel, a stock of dry goods in the store theretofore occupied by the said Baker, in Grand street, Williamsburgh, together with store fixtures, &c., for the sum or price of $5,000, payable in instalments of $100 each week, until paid, with certain interest upon a portion thereof, and with an agreement, that, if Fiegel made default in the payment of the instalments as they became due, the vendor should be at liberty to treat the whole amount then unpaid as due, and to enter and take possession of the goods and sell and dispose thereof for the satisfaction of the amount remaining unpaid. These terms are embodied in the bill of sale; and, had there been no mortgage given by Fiegel, the transaction would have been in the nature of a sale, in which the vendor, in order to preserve his lien for the price, makes a conditional delivery of the goods, reserving the right to reclaim the goods in case the price is not paid agreeably to the terms of sale. Such a transaction is perfectly valid as between the parties, and involves no idea of preference, within the meaning of the bankrupt law. The vendor, by such a transaction, gains from the bankrupt no more than by the same transaction he gives. The taking of a security for money then presently loaned is not taking a preference; no more is a sale of property, and, at the same time, reserving a lien for the price.

This arrangement by the parties was carried into further execution by the simultaneous execution of a mortgage of the goods to the vendor, corresponding, in its provisions, with the terms and conditions expressed in the bill of sale. There is no pretence of any actual fraud in these transactions, nor that, at that time, Fiegel was insolvent, or that there was any suspicion, or ground of suspicion, that he was so. Baker, the vendor, omitted to file the mortgage in conformity with the statutes of New York, and, as Fiegel took possession and remained in possession, the mortgagee could not claim under that mortgage, as against creditors of the mortgagor or subsequent purchasers or mortgagees in good faith. Fiegel, the purchaser, made payment of instalments upon the purchase money down to some time in November, 1871, paying, in all, $3,200, and then made default. On the 13th of December, the vendor, in accordance with the terms of the sale and with the mortgage, entered, took possession of and removed such of the goods as had not been already disposed of by Fiegel, and afterwards sold the same at auction, and applied the proceeds to the satisfaction of the unpaid portion of the purchase price and interest. No question has been raised, in this case, of the regularity and validity of such sale and application of the proceeds, if, as against this complainant, the vendor had a right to take possession of the goods, as security for the balance due him as the price of the goods. This statement exhibits one of the transactions which is the subject of contest herein.

The other was as follows: In May, 1871, Fiegel requested the assistance of Baker in procuring a discount at bank, (where he was a stranger,) to the amount of $3,000. Baker introduced him to the officers of the bank, endorsed his note for $3,000, at three months, and pledged United States bonds as further security; and, on the 15th of July, 1871, another discount was obtained for Fiegel, to the amount of $2,000, upon the like security; and, on the 28th of the same month, Fiegel gave to Baker a confession of judgment, in the sum of $5,000, as security, to indemnify him against his endorsements and the hypothecation of his United States bonds, and judgment was entered upon such confession on the following day, July 29th, 1871. There is no evidence justifying any impeachment of the good faith of these transactions—certainly, none creating any doubt of the good faith of Baker; and it is clear, that Fiegel received thereby the full amount of the discount of the notes so given. These notes were twice renewed, but, at the time of the last renewal, Baker being desirous of obtaining his bonds, it was agreed that Fiegel would retire the renewal notes on the 1st of December, and, if not, that Baker might pay them, although they had not yet matured. Fiegel failed to pay the notes, and, soon afterwards, Baker paid them, and thereupon issued execution upon the judgment so confessed for his indemnity, or caused it to be issued by a creditor of his own, to whom he had assigned it. The execution was levied upon the goods of Fiegel, (not included in the sale by Baker,) and, on or about the 20th of December, the property levied upon was sold, and the proceeds of sale credited on the judgment. These proceeds were not paid to the sheriff by the purchasers, but appear to have been collected by the attorney who issued the execution, and to have been paid over to the creditor of Baker, above referred to, on Baker's account.

On the 20th of December, 1871, a creditor of Fiegel filed his petition in the district court, in bankruptcy, and such proceedings were had in that court, that Fiegel was afterwards adjudged bankrupt and the complainant was appointed assignee. He

filed his bill in the district court, praying that the hereinbefore mentioned mortgage and the said judgment be declared void, as against him, as assignee, and that Baker be required to pay the value of the property taken by virtue of the same respectively. In that court, and, as I think, in conformity with views that have until recently been generally entertained upon the questions involved, the complainant had a decree for such value, from which the defendant, Baker, has appealed to this court.

1. As to the judgment confessed by the debtor, to indemnify the appellant against his endorsements and the hypothecation of his United States bonds, to procure discounts for the use of the debtor. As already suggested, there is no sufficient evidence that this transaction was not made by the appellant in perfect good faith, as an act of kindness to Fiegel, without any reason whatever to believe that the latter was insolvent. On the contrary, the proofs show that Baker then had confidence in the solvency of Fiegel, and was justified in that confidence. More than this, it is not shown that at that time Fiegel was not in fact solvent. It is impossible, I think, to say that either party contemplated any fraudulent preference, or any insolvency or fraud upon the bankrupt law. Nor did the decision below proceed upon any such ground. Before the execution was issued, there was reason to believe that Fiegel was insolvent. He was, no doubt, insolvent in fact; and, under the circumstances disclosed by the evidence, Baker had knowledge enough to make him apprehend such insolvency, if not believe it. The decision below proceeded on the ground, that the time to be taken at which to test the condition of the debtor and the knowledge of the creditor, is the time when the execution was issued which gave to Baker a lien upon the property seized thereon; and that then an advantage gained by Baker, with reasonable cause to believe his debtor was insolvent, was illegal and void. In Clark v. Iselin [21 Wall. (88 U. S.) 360] the supreme court of the United States have, at this present term, decided, (reversing the decision of the circuit court,) that, where a warrant of attorney is executed, authorizing the entry of a judgment, the validity of a judgment and levy made in pursuance thereof is to be tested by the condition of things existing when the warrant is executed and delivered, and, if such warrant is not invalid or impeachable, then the judgment and levy are valid, notwithstanding the debtor's insolvency, and knowledge thereof by the creditor, before such execution is issued. Indeed, that case goes one step further than is required

to sustain the execution and levy in this. There, the judgment itself was not entered until the insolvency of the debtor was apparent, and it was quite clear that such judgment, and the levy of an execution on the debtor's goods, must result in giving a preference to the judgment creditors over the other creditors of the debtor. I think conformity to that decision requires that this court sustain the validity of the judgment, execution, levy and sale in the present case.

2. As to the mortgage, I find no sufficient reason to doubt the correctness of the decision made in Re Leland [Case No. 8,234], that, where the holder of a chattel mortgage under the laws of New York omits to file his mortgage, or to take possession, and an assignee in bankruptcy of the mortgagor comes to the actual possession of the property, his title is unaffected by such outstanding mortgage; and that, as to him, the mortgage has no validity. This case is distinguished from that in two particulars—First, the property itself was sold and delivered with the express reservation of the right to resume the possession, expressed in the bill of sale; second, the vendor did, in fact, take possession before any other lien thereon was acquired, before the title of the assignee in bankruptcy, and, in fact, before any petition was filed. If the appellant be regarded simply as mortgagee, he took actual possession before any lien upon the property was acquired by any third person. Denio, J., in Van Heusen v. Radcliff, 17 N. Y. 580, in the court of appeals of New York, says, in reference to this statute: "When a conveyance is said to be void as against creditors, the reference is to such parties when clothed with their judgments and executions," &c. Hale v. Sweet, 40 N. Y. 97, and Doll v. Harlow [2 Hun, 659], in the supreme court of the second department (unreported), indicate that, in such case, the title of the mortgagee is regarded by the state courts as valid. How far it would be permitted to show fraud upon creditors, or the procurement of credit upon faith of the possession and apparent title, and hold such a mortgage void upon that ground, as to creditors who became such in reliance on the debtor's unincumbered title, it is not necessary here to inquire.

My conclusion is that the decree should be reversed, and the bill be dismissed, without costs.