GARRISON *et al.* v. STREET & HARPER FURNITURE & CARPET Co.

No. 2072, Okla. T.    Opinion Filed June 29, 1908.

(97 Pac. 978.)

1.    **CHATTEL  MORGAGES**— Validity — **Effect of Possession.**  A
chattel mortgage, good only between the parties because not
filed of record, is, after condition broken and delivery by
mortgagor to mortgagee of the mortgaged chattels, good as to
all others.

2.    **SAME—Priorities—Case.**  In a case where W. executes and
delivers to G., on November 29, 1904, a chattel mortgage, which
is not filed for record until December 31, 1904, and without
knowledge thereof, and for value, S. on December 15, 1904,
accepts a mortgage on the same goods, which is not filed until
January 3, 1905, and . after W. had delivered possession of the
chattels to G., after condition broken in his mortgage, G. will,
by virtue of such possession, take title thereto free from the
lien of S.'s mortgage.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; B. F. Burwell
Judge.*

Action in replevin by the Street & Harper Furniture & Car-
pet Company against G. W. Garrison.  Judgment for plaintiffs
and defendant brings error.  Pending appeal plaintiff  in error
died, and action was revived in name of Kathleen Garrison and
Harvey D. Garrison.  Reversed and remanded.

Plaintiff in error in his brief makes a statement of facts in
this case which for the purpose of this appeal, is by the defendant
in error conceded to be correct.  From it we glean the following
facts upon which this opinion is predicated:  November 20, 1904,
the plaintiff in error, G. W. Garrison, sold and transferred to his
codefendant in the court below, Mrs. M. J. Wade, all of his right,
title, and interest in and to a certain lease on a building known as
the "Illinois Hotel" in Oklahoma City, together with all of the

office fixtures and furniture and hotel equipment, taking from her notes in the sum of $4,116.65, and a chattel mortgage to secure the same on the personalty sold. The mortgage also contained the stipulation that it was to cover "all other furniture or supplies bought and placed in said hotel by the party of the first part [Mrs. M. J. Wade], and all furniture, fixtures, and supplies of every description now in said hotel and this day sold by the said G. W. Garrison to the party of the first part; also all furniture, fixtures, bedding and all other personal property of whatsoever kind or description hereinafter bought by the party of the first part." This mortgage was not filed for record until more than a month had elapsed from its execution, to wit, on December 31, 1904, when it was filed in the office of the register of deeds of Oklahoma county, wherein was located the said chattels.

On December 15, 1904, defendant in error, the Street & Harper Furniture & Carpet Company, sold to Mrs. M. J. Wade, certain personal property consisting of beds, dressers, springs, etc., which were delivered to her in the hotel for the purpose of furnishing certain rooms therein, the amount of the same being $1,274.45, to secure the payment of which the said Street & Harper Furniture & Carpet Company took a chattel mortgage, which was signed by Mrs. M. J. Wade, and delivered to them on the 15th day of December, 1904. This chattel mortgage was not filed for record at the time it was taken, but was held by said company until the afternoon of January 3, 1905, at which time it was filed in the office of the register of deeds of Oklahoma county. Quoting from the brief of plaintiff in error:

"The conditions of the mortgage executed to plaintiff in error by the said Mrs. M. J. Wade having been broken, on the 3d day of January, 1905, about 9 o'clock in the forenoon, and about four hours before defendant in error filed its said mortgage for record, the said Mrs. M. J. Wade freely and voluntarily delivered all of said property to the plaintiff in error, through his attorney, E. G. McAdams, an attorney of record of this territory, and authorized the said attorney to foreclose said mortgage by a sale of said

property, and apply the proceeds thereof to the payment of said notes due plaintiff in error."

That in keeping with the purposes for which possession was given, plaintiff in error advertised the said property for sale. Whereupon, the conditions of the mortgage, given by the said Mrs. M. J. Wade to the defendant in error having been broken on the 15th day of January, 1905, by virtue of the fact that the first note, which was due in 30 days, was unpaid, defendant in error began its suit of replevin against G. W. Garrison and Mrs. M. J. Wade to recover the property sold her on December 15, 1904. Issues were framed, based on the facts above set out. A trial was had in the district court before a jury, evidence being introduced by both parties, and on motion of both parties, the court took the case from the jury, rendering judgment in favor of plaintiff, giving it possession of the property in question. Motion for new trial was filed and overruled and exception saved, and the case is before us by virtue of proceedings in error taken in the Supreme Court of the territory of Oklahoma.

*Grant & McAdams*, for plaintiffs in error.

*R. N McConnell, Sam Hooker,* and *Chambers & Taylor,* for defendant in error.

Dunn, J. (after stating the facts as above). From the statement of facts it will be observed that Garrison's mortgage, which was given on November 29th, was not filed for record until December 31, 1904; that the Street & Harper Furniture & Carpet Company's mortgage, which was given December 15, 1904, and which, it is conceded, was taken without notice of the prior unrecorded mortgage, was not filed for record until January 3, 1905, it being filed four days after the filing of Garrison's mortgage, and about four hours after the possession of the property had been delivered to Garrison. The sole question before the court is, who, under these circumstances, is entitled to these goods? We confess that this is a question upon which the authorities are not entirely in accord, and upon which counsel for either party have cited us to

no authority of any court bearing precisely upon this point. From the facts stated, it will be observed that the mortgage provided that it should cover all the after-acquired personal property of the mortgagor.

Section 8, c. 50, par. 3445, Wilson's Rev. & Ann. St. Okla., 1903, provides:

"An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest."

Section 18, c. 53, par. 3578, Wilson's Rev. & Ann. St. Okla., 1903, provides:

"A mortgage of personal property is void as against creditors of the mortgagor, subsequent purchasers, and incumbrancers of the property in good faith, for value, unless the original, or an authenticated copy thereof, be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated; and a mortgage of personal property situated in portions of this territory attached to an organized county thereof for judicial purposes, shall be void against creditors of the mortgagor, subsequent purchaser, or incumbrancers of the property in good faith for value, unless the original or an authenticated copy thereof, be deposited and filed in the office of the register of deeds of the county to which the territory in which such property is situated, is attached for judicial purposes."

The foregoing statutes are the ones embodying the law involved, and under them defendant in error takes the position that an agreement to place a lien upon after-acquired property applies only to the interest which the mortgagor had in the property itself, and that in this instance the property sold to Mrs. M. J. Wade was subject to a mortgage for a portion of the purchase price when sold, and that the only interest Mrs. Wade had therein that could be subjected to the mortgage lien of Garrison was the equity over and above the mortgage lien of defendant in error. No authorities are cited in support of this proposition, and in our judgment

it is not tenable. Mrs. M. J. Wade purchased the goods from defendant in error. She paid for them with her notes. She secured title to them, and on the title she had in them she gave her vendors a lien, by executing and delivering a chattel mortgage. The goods sold to Mrs. M. J. Wade at the time of the sale had no mortgage upon them, and before a mortgage could be placed on them by her, it was essential that title to them vest in her. As soon as this title vested, as between herself and Garrison, at least, Garrison's mortgage reached it, and the property immediately became subject to the same. As between herself and Garrison, it was unnecessary for either of them to take further step, or do any further act, to make effective his lien. *Grand Forks National Bank v. Minneapolis & Northern Elevator Company,* 6 Dak. 357, 43 N. W. 806. But, whether or not Garrison secured any lien on these goods as against the Street & Harper Furniture & Carpet Company presents altogether another question, and one which will be considered in discussing the subsequent doing of these parties in reference to their respective chattel mortgages and the property. It must be conceded that, as against the mortgage of defendant in error, Garrison's mortgage was void on the 15th day of December, 1904, when Mrs. M. J. Wade executed and delivered her mortgage on this property in question to defendant in error. Upon what theory the defendant in error was given judgment in the court below we are not advised, except as is stated in counsel's brief that the decision of the lower court was right, under the construction given to our statute in the case of *Greenville National Bank v. Evans-Snyder-Buel Co.,* found in 9 Okla., at page 353, and 60 Pac., at page 249. In addition thereto we are cited to three other authorities: *Bank of Farmington v. Ellis,* 30 Minn. 270, 16 N. W. 243; *De Courcey v. Collins,* 21 N. J. Eq. 357, and Jones on Chattel Mortgages, § 246. The section from Jones on Chattel Mortgages finds its support in two cases, which are here cited with it.

The Minnesota statute on which the case of *Bank of Farmington v. Ellis, supra,* is based, reads as follows:

"Every mortgage on personal property which is not accom-

panied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void, as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless it appears that such mortgage was executed in good faith, and not for the purpose of defrauding any creditor, and unless the mortgage or a true copy thereof is filed as hereinafter provided."

The facts in the case were that Ellis executed and delivered a mortgage to the bank on August 18, 1881. He executed and delivered a mortgage on the same property to Barclay, August 17, 1881. The bank filed its mortgage August 20, 1881, and Barclay filed his mortgage August 18, 1881. Ellis retained possession of the property until the bank brought foreclosure proceedings on its mortgage, and the question was which, as between these two mortgages, had preference by reason of the time of execution and delivery and filing of record, and the court held:

"Under the statute in relation to chattel mortgages (Gen. St. 1878, c. 39, § 1), where the possession is not delivered, a prior mortgage will be postponed to a subsequent *bona fide* mortgage, if not duly filed when the latter is executed, although the former may be subsequently filed prior to the filing of the second mortgage."

The case of *De Courcey v. Collins, supra,* was also, as Chief Justice Beasley said, "a struggle for priority between the holders, severally, of two chattel mortgages." The question involved related entirely to the matter of record and the priority thereof, and the court, holding on this, said:

"A first chattel mortgage unregistered is absolutely void against a second mortgage taken in good faith; and such second mortgage need not be recorded at all to give it priority over such first mortgage."

It will be be observed that, in both the cases cited to support the judgment, the element upon which the plaintiff in error in this case relies, to-wit, possession on the part of the first mortgagee, did not obtain, and was not considered by the court, and hence these authorities are not applicable to the case.

The other authority relied upon, the case of *Greenville National Bank v. Evans-Snyder-Buel Company, supra,* and which doubtless was the controlling authority .in the mind of the court rendering judgment herein, has recently had the consideration of this court in *Frick Company v. Oates,* 20 Okla. 473, 94 Pac. 682, and the portion of that opinion bearing upon the question involved in this case was specifically overruled in the following syllabus:

"In an action of replevin the right of a creditor to the possession of the property in controversy, who holds a chattel mortgage on his debtor's property, good as between the parties, but void as to the other creditors, because not filed as required by law, but who has taken possession of the mortgaged property, after condition broken, as security for the debt, with the consent of the mortgagor, is superior, under section 3578, Wilson's Rev. & Ann. St. Okla. 1903, to that of a subsequent execution creditor who has levied upon the same. *Greenville National Bank v. Evans-Snyder-Buel Co.,* 9 Okla. 353, 60 Pac. 249, is overruled."

The court, through Mr. Justice Turner, speaks as follows:

" 'At common law the mortgagee held possession of the property as well as the legal title. If the mortgagor was permitted to retain possession, the conveyance was presumptively fraudulent. The rule at common law .has been changed by nearly all of the Western states, so that the legal title to the property remains in the mortgagor, and, where the mortgage or statute so provides, the mortgagor may remain in possession, and, as a general rule, if the mortgagor remains in possession, the mortgage must be filed, or the mortgagee will not be protected against the creditors of the mortgagor; but, if the mortgagee is in possession of the property, the most of the states protect his rights under his mortgage against the mortgagor's creditors.' Cobbey on Chattel Mortgages, speaking of unfiled chattel mortgages (volume 1, § 498) says: 'If the mortgagee takes possession of the mortgaged property before any other right or lien attaches, his title under the mortgage is good against everybody, if it was previously valid between, the parties'—and authorities cited. Again, in the same section we find: 'Where a creditor,. who holds a mortgage of his debtor's property, which is void as to other creditors of the debtor because it was not filed, takes possession of the mortgaged property, with the consent of the debtor, as

security for the debt, he may still, as against other creditors, hold the property as pledgee. * * * If a mortgagee takes possession of the mortgaged chattels before any other right or lien attaches, his title under the mortgage is good against everybody, if it was previously valid between the parties, although it be not acknowledged and recorded or the record be ineffectual by reason of some irregularity. The subsequent delivery cures all such defects, and the mortgagee's right of possession is good against the world. * * *"—citing numerous authorities. . *First National Bank v. Damm,* 63 Wis. 249, 23 N. W. 497; Hammon on Chattel Mortgages, p. 82."

A leading case on this subject is *Cameron, Hull & Co. v. Marvin,* 26 Kan. 612. In this case Patterson, a merchant, executed a number of chattel mortgages upon certain goods and merchandise, delivering the same for value to Cameron, Hull & Co. These mortgages were not filed of record. Goodnow & Co., after these mortgages were executed, sold and delivered Patterson a car of flour upon the strength and credit of his apparent unincumbered, visible assets. Patterson gave possession of the mortgaged goods to the mortgagees nine days prior to the levy of an attachment by Goodnow; suit being brought and the ground taken that the mortgages were fraudulent and void as to him, because not recorded, and by reason of the fact that he was a subsequent creditor for value and without notice. Cameron, Hull & Co. replevied. The Supreme Court of the state of Kansas, in the syllabus of the reported case, say:

"In an action of replevin, where the plaintiff claims the property by virtue of four chattel mortgages, and the defendant claims the property by virtue of an attachment issued against the plaintiff's mortgagor, and levied upon the property in controversy, and where the chattel mortgages were never recorded, and the mortgagee did not immediately take possession of the property, but did, a long time after the execution of the mortgages, and nine days prior to the levy of the attachment upon the property, take the possession of the same under the mortgages, by and with the consent of the mortgagor, held, that the mortgages, from the time the mortgagee took possession of the mortgaged property, must be considered valid."

In the consideration of the case, Justice Valentine, who wrote the opinion, says:

"We shall assume, for the purpose of this case, that all the mortgages were void as against F. Goodnow & Co., and as against all other creditors of Patterson, and subsequent purchasers, up to the time when the plaintiffs took possession of the property, and shall simply discuss the question whether they continued to be void after that time. Indeed, such mortgages, not being recorded, and being of property not delivered, are made void by section 9 of the mortgage act. * * * Did the mortgages become valid when the plaintiffs took possession of the property under them? We think we must answer this question in the affirmative. *Dayton v. Savings Bank*, 23 Kan. 421; *Savings Bank v. Sargent*, 20 Kan. 576; *Nash v. Norment*, 5 Mo. App. 545; *Eastman v. Water Power Co.*, 24 Minn. 437; *Read v. Wilson*, 22 Ill. 377, 74 Am. Dec. 159; *Frank v. Miner*, 50 Ill. 444; *Chipron v. Feikert*, 68 Ill. 284; *McTaggart v. Rose*, 14 Ind. 230; *Brown v. Platt*, 8 Bosw. (N. Y.) 324; *Brown v. Webb*, 20 Ohio, 389; *Chapman v. Weimer*, 4 Ohio St. 481; *Field v. Baker*, 12 Blatchf. 438, Fed. Cas. No. 4,762 * * * If the mortgagee, whose mortgage is not recorded, and who does not have possession of the property, records his mortgage with the consent of the mortgagor, or takes possession of the property with the consent of the mortgagor, his mortgage then has the force and effect of a mortgage executed on the day on which it is filed for record, or on which the property is delivered. It is the same then as though a new mortgage had been executed by the parties and recorded. The old mortgage is then given life and force and effect by the joint action of both the parties, and hence must be held to be valid from that time on, as against all persons."

While this holding of the Kansas court, in reference to the effect of the filing of the mortgage, is apparently in conflict with the authorities cited by defendant in error, the effect given to the possession of the mortgaged chattels taken with the consent of the mortgagor is practically the uniform holding of all the states. Nor is it inequitable to the junior mortgagee that this should be so, for the force of the statute on which he relies to give validity to his mortgage over the prior unrecorded mortgage also renders his unrecorded mortgage liable likewise to be held void as to

subsequent incumbrancers or purchasers in good faith and without notice. This construction placed upon the statute will make it uniform in its operation as to all. The conditions of Garrison's mortgage were broken. Garrison, under the terms of his contract with his mortgagor, had a right to the possession of the chattels, so that he might make his debt out of them, and when he did, his title was then not only good as against Mrs. Wade, but as to all others.

In the case of *Hixon v. Hubbell et al.,* 4 Okla. 224, 44 Pac. 222, the Supreme Court of the territory held:

"A chattel mortgage in Oklahoma does not entitle the mortgagee to possession until after condition broken, but creates a lien in favor of the mortgagee, while the title remains in the mortgagor. On condition broken the mortgagor may deliver possession to the mortgagee, and pass the title of the mortgaged chattels to him."

In the case at bar the conditions of Garrison's mortgage were broken, the mortgagor delivered possession of the mortgaged chattels to him, and whatever may have been the extent of his claim upon them prior to the delivery, after delivery he had title, and the effect of the failure of recording his mortgage as to the defendant in error was cured.

The judgment of the lower court is reversed, and the case is remanded to the district court of Oklahoma county, with instructions to set aside the judgment heretofore rendered herein, and to enter one in accordance with this opinion.

All the Justices concur.