## STOCKYARDS LOAN CO. v. NICHOLS et al.

### (Circuit Court of Appeals, Eighth Circuit. April 9, 1917.)

### No. 4716.

1. CHATTEL MORTGAGES ⬅124—AFTER-ACQUIRED PROPERTY—"INCREASE"—"ACCRETIONS."

A mortgage on 500 head of cattle, with all increase thereof and accretions thereto, covered, not only the offspring of the mortgaged cattle, but also cattle added to the herd by acquisition; since, while "increase" as used in mortgages ordinarily means that which is added to the original stock by augmentation or growth, produce, profit, interest, progeny, issue, or offspring, the word "accretions" has a broader meaning and is not confined to the results of natural growth, but includes the additions of parts from without, and this was especially true where the mortgagee knew that the mortgagor only had 170 head of cattle, and the loan secured by the mortgage was made to enable him to buy cattle until he should have 500 head as mentioned in the mortgage (citing Words and Phrases, Increase; see, also, Words and Phrases, First and Second Series, Accretion).

2. CHATTEL MORTGAGES ⬅18—VALIDITY—AFTER-ACQUIRED PROPERTY.

A chattel mortgage on cattle, including all cattle added to the mortgagor's herd by purchase, was valid under the express provisions of Rev. Laws Okl. 1910, § 3829.

3. CHATTEL MORTGAGES ⬅157(3)—RIGHTS OF PURCHASERS—NOTICE—QUESTIONS FOR JURY.

In replevin by a chattel mortgagee of cattle against a purchaser from the mortgagor, evidence *held* to make questions for the jury as to whether the purchasers, who were informed that the mortage covered cattle subsequently purchased by the mortgagor, were not put upon inquiry, and would not have learned of the mortgagee's lien by investigation.

4. TRIAL ⬅45(1)—OFFER OF PROOF—EFFECT OF ADVERSE RULING.

In replevin by mortgagees of cattle, described as branded with a crossbar against purchasers from the mortgagor, where the court ruled that the mortgage did not cover cattle purchased after its date, it was not incumbent on the mortgagee to present proof of the branding of the cattle after they were purchased and before they were sold to defendants.

5. CHATTEL MORTGAGES ⬅148—PURCHASERS FROM MORTGAGORS—NOTICE.

Where such purchasers were charged with knowledge of the mortgage, and that it covered after-acquired cattle, they were bound also to know that brands need not be affixed to the cattle immediately after purchase.

6. CHATTEL MORTGAGES ⬅155—BONA FIDE PURCHASERS—NOTICE.

Comp. Laws Okl. 1909, § 4422, provided that a mortgage of personal property was void as against creditors and subsequent purchasers, and incumbrancers in good faith for value, unless the original or an authenticated copy was filed as therein required. Rev. Laws Okl. 1910, § 4031, contains a similar provision, except that the words "in good faith" are omitted; but a further provision of such section, relating to mortgages on property in an unorganized county makes such mortgages void against subsequent purchasers or incumbrancers in good faith for value, unless filed. Section 4035 provides that a chattel mortgage shall cease to be valid as against subsequent purchasers or incumbrancers in good faith after the expiration of three years, unless a renewal certificate is filed. *Held*, that the Legislature did not intend to make an unfiled mortgage invalid as against a purchaser for value; but having notice of the mortgage used the words "purchasers and incumbrancers for value" in the first part of the section in the same sense as the words "purchasers or incumbrancers in good faith for value" in the last part of the section.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. STATUTES ⊚�longdash181(2), 184, 205, 225—RULES OF CONSTRUCTION.

 To ascertain the intention of the Legislature in the enactment of the statute, the court may look to each part of the statute, to other statutes upon the same or relative subjects, to the old law upon the subjects, to the evils and mischiefs to be remedied, and to the natural or absurd consequences of any particular interpretation.

8. CHATTEL MORTGAGES ⊚�longdash173(4)—RIGHTS OF PURCHASERS—NOTICE—EVIDENCE.

 In replevin by a chattel mortgagee of cattle against a purchaser from the mortgagor, a certified copy of the mortgage and of the record of its filing should have been admitted on the theory that the jury might find that the purchasers, knowing that a mortgage had been given, should have made inquiry at the county clerk's office, and would have learned that the mortgage covered after-acquired property.

9. CHATTEL MORTGAGES ⊚�longdash172(2)—REPLEVIN AGAINST MORTGAGOR—DEFENSES.

 In replevin by a chattel mortgagee against the mortgagor and purchasers from him, the demurrer to the evidence of the mortgagor was properly sustained, where the property was in possession of the purchasers, as the action of replevin is a possessory one.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Action by the Stockyards Loan Company against James Nichols and others. Judgment for defendants, and plaintiff brings error. Affirmed in part and reversed in part, and new trial ordered.

Robert F. Blair, of Wagoner, Okl., and B. F. Deatherage, of Kansas City, Mo., for plaintiff in error.

William B. Moore, of Muskogee, Okl. (W. W. Noffsinger and Y. P. Broome, both of Muskogee, Okl., on the brief), for defendants in error.

Before HOOK and STONE, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. The plaintiff in error brought an action in replevin against defendants in error, Nichols, Miller, and Briscoe, to recover possession of some cattle. At the close of plaintiff's evidence the court directed a verdict in favor of the defendants. The plaintiff claimed the right of possession because of a lien arising from a chattel mortgage given to it by defendant Nichols. The defendants Miller and Briscoe, as partners, from whose possession the property was taken under the writ, claimed the right of possession because they had purchased the cattle of Nichols, without notice of plaintiff's claim. Nichols had borrowed about $10,000 from plaintiff on January 2, 1915, and to evidence and secure the debt he, at the same time, executed a promissory note and chattel mortgage. A copy of the mortgage was filed on January 12, 1915, with the county clerk of Cherokee county, Okl., where the property was situated. By evidence and admissions on the trial, it was established that Miller and Briscoe purchased the replevined cattle from Nichols, in Cherokee county, in the early part of February, 1915. The court directed the jury to return a verdict in favor of defendants because the mortgage did not include cattle purchased by Nichols after its date.

Portions of the mortgage relating to the description of the property incumbered read as follows, except that the word "crossbar" is substituted for the character used in the mortgage:

"One hundred fifty cows, ages from three to seven years old, all branded crossbar on left side or shoulder.

"Ninety head of three year old steers, branded crossbar on left side or shoulder.

"Two hundred head of two year old steers branded crossbar on left side or shoulder.

"Sixty head of yearling steers and heifers, branded crossbar on left side or shoulder.

"Located in E. Crawford's pasture 4 miles northwest of Hulbert, Cherokee County, Okl.

"In the event said first party owns a larger number of cattle, of like kind and description as those herein described, then said second party, or its assigns, shall have the right at any time to elect and select, from such entire number, cattle of like kinds, equal to the number, as stated in this mortgage.

"Together with all increase thereof, and accretions thereto, being all the cattle of the above description owned by said first party on his own premises leased, loaned or hired to him in said county of Cherokee, state of Oklahoma, it being hereby expressly stipulated and agreed, that said cattle above described, shall be kept on feed, on said premises, separate and apart from all other cattle during the existence of this mortgage.

"The marks and brands used above to describe said cattle are the holding marks and brands and carry the title, although said cattle may have other marks and brands. This mortgage shall also cover and include all the right, title, and interest of said party in and to the feed, pasture, feed pens, feed troughs, and water privileges used in feeding said cattle until the indebtedness herein secured is paid in full. * * *

"The first party shall not sell or attempt to sell, except in conformity herewith, or remove or attempt to remove, from its present location in the county aforesaid, any part of said property. * * *

"For the purpose of obtaining the money at this time loaned by the second party, and for the benefit of possible future transactions, the first party states that the said first party is the absolute and lawful owner of all of the above-described property; that the same is free from any and all incumbrances; that he has full power to sell or mortgage the same and give clear title thereto and that all of the same is now in the possession of first party at the location above mentioned in said county and state."

[1] It appears that in seeking this loan the mortgagor had given a financial statement to the mortgagee showing that he owned 170 head of cattle that were incumbered by a chattel mortgage for $2,200, and he listed his total net worth as $5,425. The loan was made by plaintiff through the agency of Mr. Waller who was cashier of a bank at a town near to Nichols' residence. Mr. Waller testified, and from his testimony it appears that it was contemplated that Nichols should use the money borrowed from plaintiff to buy cattle additional to the 170 head he possessed, until he should have 500 head, the number mentioned in the mortgage. In the conversation with Mr. Waller, the mortgagor outlined his plans for the purchase of more cattle, giving the names and locations of persons from whom he expected to make purchases. The word "increase," as used in mortgages of this kind, ordinarily means that which is added to the original stock by augmentation or growth; produce; profit; interest; progeny; issue; offspring. Alferitz v. Ingalls (C. C.) 83 Fed. 964; Jones on Ch. Mtges. (5th Ed.) § 149; 4 Words and Phrases, 3515.

243 F.—33

The word "accretion," as defined by Webster's Dictionary, means:

"Growth; organic growth; also, increase by external addition, or by accession of parts externally; and extraneous addition, as an accretion of earth."

The Century Dictionary defines it as:

"The act of accreting or accrescing; a growing to; an increase by natural growth; an addition; specifically an increase by an accession of parts externally."

The Standard Dictionary gives the definitions:

"(1)Growth or formation by external additions; increase by adhesion or inclusion. (2) That which is so formed or added, an accumulation or external addition; matter added."

It will be seen that the use of the word "accretions" expresses a broader idea than is expressed by the word "increase"; it is not confined to the results of natural growth, but includes the additions of parts from without. In the mortgage in question the use of this phrase clearly expressed the idea that the mortgage should extend, not only to the offspring of the mortgaged cattle, but also to the cattle added to the herd by acquisition.

Looking to the situation of the parties in applying the meaning of these words to their subject-matter, no construction of the mortgage other than that the word "accretions" was intended to apply to after-purchased cattle seems reasonable, when it is considered that the mortgagee knew that the borrower had only 170 head of cattle, that they were incumbered for $2,200, and that the borrower's credit rating was quite inadequate as security for the amount loaned. The purpose of the mortgage was to give security to the plaintiff, and the only way by which it could be accomplished was to have its lien extended to cattle to be purchased thereafter, with the funds advanced, until the total number mentioned in the mortgage had been acquired.

[2] The validity of the lien thus given does not seem open to question, as section 3829, of the Revised Laws of Oklahoma of 1910, provides:

"An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case, the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest."

As construed by the Supreme Court of Oklahoma, this statute gives to the mortgagee a legal lien upon the after-acquired property upon its acquisition by the mortgagor. Payne v. McCormick Harvesting Mach. Co., 11 Okl. 318, 66 Pac. 287; Garrison v. Street & Harper Furniture & Carpet Co., 21 Okl. 643, 97 Pac. 978, 129 Am. St. Rep. 799; Central Trust Co. v. Kneeland, 138 U. S. 414, 11 Sup. Ct. 357, 34 L. Ed. 1014, Title Guaranty & Surety Co. v. Witmire, 195 Fed. 41, 115 C. C. A. 43.

[3] After the original note and mortgage had been admitted in evidence, the plaintiff sought to prove that Miller and Briscoe had notice of its lien. Mr. Waller testified to a conversation that he had with Miller at the bank about the middle of January, 1915, and before Mil-

ler and Briscoe made their purchase from Nichols, in which Miller inquired where Nichols was "getting this money to buy cattle with." Waller informed him that he had secured a loan of $10,000 for Nichols from a Kansas City Loan company. "I said I got Mr. Nichols a $10,000 loan on the cattle he is now buying. * * * Well, I said I got this mortgage on cattle he is now buying." Section 2926 of the Revised Laws of Oklahoma of 1910 is as follows:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself."

[4, 5] Mr. Miller undertook an inquiry of Mr. Waller as to the source of the money which Mr. Nichols was using, evidently deeming that fact one that was important, and was informed of the loan and of the mortgage security therefor, and that the mortgage was not limited to cattle owned by Mr. Nichols at the date of its execution but was upon cattle Mr. Nichols was then buying. In view of this evidence, there were questions to be submitted to the jury, whether Mr. Miller, thus put on guard, should not have made further inquiry before he purchased these cattle for his firm, so soon after the conversation, and whether he would not have learned of plaintiff's lien by such investigation. There was evidence to show that the cattle replevined bore the crossbar brand, when they were seized in August, 1915, and that some also bore newer and later brands. The defendants question the sufficiency of the proof of identity of the cattle with those mentioned in the mortgage. They assert that there is no evidence the crossbar was Nichols' brand or that it was placed upon these cattle by Nichols. The court had already ruled that the mortgage did not cover cattle purchased after its date, and that meant plaintiff's defeat. Hence it was not incumbent on plaintiff to press the proof of the branding of these cattle after they were purchased and before they were sold to Miller and Briscoe. As the mortgage covered cattle increase and cattle to be bought, although it described them as branded, it must have been in contemplation of the parties that the brand would be affixed by Mr. Nichols after he had acquired them, and, as Miller and Briscoe may be held to knowledge of the mortgage and that it covered after-acquired cattle, they would be bound also to know that brands need not be affixed to the cattle immediately after purchase.

[6] The claim is made on behalf of Miller and Briscoe that the statutes of Oklahoma invalidate plaintiff's mortgage as to them, because neither the original mortgage nor a copy thereof authenticated by the register of deeds was filed for record. For many years the statute of Oklahoma relating to this subject read as follows:

"A mortgage of personal property is void as against creditors of the mortgagor, subsequent purchasers, and incumbrancers of the property in good faith, for value. unless the original, or an authenticated copy thereof, be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated." Section 4422, Snyder's Comp. Laws of Okl. 1909.

See Strahorn-Hutton-Evans Commission Co. v. Florer, 7 Okl. 499, 54 Pac. 710.

In 1911 the Legislature of Oklahoma adopted the revision of the state statutes made by Code Commissioners known as the Revised Laws of Oklahoma, and the corresponding provision is found as a part of section 4031, but the words "in good faith" are omitted. It is contended that this change of the statute renders void the plaintiff's mortgage, because Miller and Briscoe were purchasers from Nichols for value. The statute in question is a portion of a chapter relating to the execution, recording and effect of mortgages upon both real and personal property. Other sections of the chapter retain the exception of actual notice as equivalent to a sufficient notice by record. Sections 4021, 4035, Rev. Laws of Okl. 1910.

[7] In order to ascertain the intention of the Legislature in the enactment of section 4031, the court may look to each part of the statute, to other statutes upon the same or relative subjects, to the old law upon the subject, to the evils and mischiefs to be remedied, and to the natural or absurd consequences of any particular interpretation. Lewis, Suth. Stat. Const. §§ 378, 382, 471; Endlich on Interp. of Stats. §§ 39, 295, 298; Holy Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226; Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969; United States v. Hogg, 112 Fed. 909, 50 C. C. A. 608; Interstate Drainage & Invest. Co. v. Board of Com'rs, 158 Fed. 270, 85 C. C. A. 532; Hemmer v. United States, 204 Fed. 898, 123 C. C. A. 194; Harper v. Victor, 212 Fed. 903, 129 C. C. A. 423.

The remaining portion of section 4031 is as follows:

"And a mortgage of personal property situated in portions of this state attached to an organized county thereof for judicial purposes, shall be void against creditors of the mortgagor, subsequent purchasers, or incumbrancers of the property in good faith for value, unless the original or an authenticated copy thereof, be deposited and filed in the office of the register of deeds of the county to which the territory in which such property is situated is attached for judicial purposes."

If a literal interpretation is placed upon this section, an unrecorded mortgage upon personal property situated in unorganized counties is void as to purchasers in good faith, but a mortgage upon property situated in organized counties is void as to purchasers in bad faith. Section 4035 provides that a chattel mortgage shall cease to be valid as against subsequent purchasers or incumbrancers in good faith after the expiration of three years from filing for record, unless a renewal certificate is filed. We cannot believe that the Legislature of Oklahoma intended to inaugurate a new policy or to declare that one who knew of an existing incumbrance might ignore it and acquire property free from any lien, if he but paid some consideration to the seller. Nor was it intended that one rule should apply in organized counties and the opposite rule in unorganized counties, nor one rule as to real estate mortgages and its opposite as to chattel mortgages. The purpose of the statute was to give constructive notice to those whose dealings were in good faith, and who had no actual knowledge of the facts. The words "purchasers and incumbrancers for value," in the first portion of section 4031, are used in the same sense as the words "purchasers or incumbrancers of the property in good faith for value" in

the remainder of the section. Van Rensselaer v. Clark, 17 Wend. (N. Y.) 25, 31 Am. Dec. 280; Gibson v. Linthicum (Okl.) 150 Pac. 908; Merchants' Nat. Bank v. Frazier (Okl.) 159 Pac. 647.

[8, 9] The plaintiff offered in evidence a certified copy of the mortgage and of the record of its filing, on the theory that the jury might find as one reasonable act of diligence, that inquiry should have been made at the county clerk's office by the purchasers of these cattle after they knew that Nichols had given a mortgage upon these cattle, and had that inquiry been made they would have learned of the terms of this mortgage. The court excluded this evidence, consistently with its ruling that notice of the mortgage was of no avail, as it did not cover after-acquired property. We think this evidence was admissible, and that the demurrer of Miller and Briscoe to the evidence should have been overruled. As the action of replevin is a possessory one, and the cattle were in the possession of Miller and Briscoe, the demurrer of Nichols was properly sustained. Robb v. Dobrinski, 14 Okl. 563, 78 Pac. 101, 1 Ann. Cas. 981.

For these reasons, the judgment will be affirmed as to the defendant Nichols, but as to the other defendants it will be reversed and a new trial ordered.