Frances B. EDGE, Administratrix of the Estate of Luther G. Edge, Deceased, Plaintiff in Error,

v.

Ralph F. SMITH, John W. Tyler, John M. Kane, and Scott Beasley, Co-Partners d/b/a General Acceptance Company, Defendants in Error.

No. 36400.

Supreme Court of Oklahoma.

April 26, 1955.

Rehearing Denied June 7, 1955.

C. L. McArthur, Hobert G. Orton, Ada, for plaintiff in error.

A. W. Trice, Ada, for defendants in error.

JACKSON, Justice.

This is a replevin action involving the priority of two unfiled chattel mortgages. The parties will be referred to as they appeared in the trial court.

On March 11, 1953, the Guy Thrash Motor Company, a partnership composed of Guy Thrash and Lucille Thrash, executed a chattel mortgage (hereinafter referred to as first mortgage), on the automobile in question to the defendants herein.

On March 14, 1953, the Guy Thrash Motor Company executed a chattel mortgage (hereinafter referred to as second mortgage), in favor of Luther G. Edge, since deceased, and this action is brought by his administratrix in replevin for recovery of the automobile, or its alleged value of $1,-815, together with $100 damages for withholding the same from plaintiff.

Neither of the foregoing mortgages was filed with the county clerk at a time material to the issues herein, and it is admitted that neither mortgagee had actual or constructive notice of the other mortgage.

On April 6, 1953, the defendants felt insecure in their mortgage and went upon the premises of the Guy Thrash Motor Company and obtained possession of the automobile. Neither of the partners of the Guy Thrash Motor Company was present at the time and the defendants, acting through defendants' agents, obtained possession of the automobile from one R. W. Plummer, who identified himself as general sales manager of the Guy Thrash Motor Company.

On April 8, 1953, the plaintiff brought this action in replevin to recover the automobile from the defendants.

At the conclusion of the trial both parties asked for a directed verdict. From an adverse judgment in the trial court, the plaintiff appeals.

Plaintiff, second mortgagee, claims priority by virtue of the Statute, 46 O.S.1951 § 57. She also makes claim to priority under the common law for the reason, she says, that the mortgagee (first mortgagee and defendants herein), must obtain possession with the consent of the mortgagor, and that the mortgagor's agent herein had no authority to give such consent. In support of her common law claim to priority she invites our attention to Garrison v. Street & Harper Furniture & Carpet Co., 21 Okl. 643, 97 P. 978.

The defendants (first mortgagee), claim priority under the common law as a mortgagee in possession; that they obtained possession from the mortgagor legally, as between defendants and the mortgagor, and that nothing more under the law is required to give their mortgage priority. That if consent of the mortgagor to the transfer of the property to them is necessary, that the mortgagor's agent, Plummer, had authority to give consent for the mortgagor and did give such consent.

The pertinent part of the Oklahoma statute in regard to the filing of chattel mortgages is contained in 46 O.S.1951 § 57, and is as follows:

"A mortgage of personal property is void as against creditors of the mortgagor, subsequent purchasers, and encumbrancers of the property, for value, unless the original, or a certified copy thereof, be filed by depositing the same in the office of the County Clerk of each County where the property mortgaged, or any part thereof, is at such time situated; * * *."

Under this statute there can be no doubt that the mortgage of the defendants, executed March 11, 1953, was wholly void as to Luther G. Edge on March 14, 1953, the date Luther G. Edge accepted the mortgage from Guy Thrash Motor Company without actual or constructive notice. There is nothing in the statute which gives defendants' mortgage priority over the plaintiff's mortgage.

We next inquire to see if defendants' mortgage may obtain priority under the common law.

In Greenville National Bank v. Evans-Snyder-Buel Co., 9 Okl. 353, 60 P. 249, 261, in the body of the opinion, this court said:

"At common law the mortgagee held possession of the property as well as the legal title. If the mortgagor was permitted to retain possession, the conveyance was presumptively fraudulent. The rule at common law has been changed by nearly all of the Western states, so that the legal title to the property remains in the mortgagor, and, where the mortgage or statute so provides, the mortgagor may remain in possession, and, as a general rule, if the mortgagor remains in possession the mortgage must be filed, or the mortgagee will not be protected against the creditors of the mortgagor; but, if the mortgagee is in possession of the property, the most of the states protect his rights under his mortgage against the mortgagor's creditors."

See, also, 14 C.J.S., Chattel Mortgages, § 189, p. 799, to the effect that a retention of the property by the mortgagor renders the mortgage presumptively fraudulent as to other creditors.

Thus it will be seen that under the common law the mortgagee must take possession of the mortgaged property or the mortgage is presumed to be fraudulent.

This rule of law is sound. The significance of possession is obvious. It gives

notice to future incumbrancers that the mortgagee has an interest in the property. See in this connection the early case of Blanchard v. Ingram, 2 Ind.T. 232, 48 S.W. 1066.

■ The purpose of our filing statute is obvious. The filing of a chattel mortgage gives constructive notice to all future incumbrancers that the mortgagee has an interest in the property despite the fact that the mortgagor remains in possession.

The old common law rule of continuous possession (to constitute notice), has been modified by court decisions so that the mortgagee need not be in continuous possession. It is sufficient if he be in possession at and before the time the new or subsequent lien attaches or accrues. 14 C.J.S., Chattel Mortgages, § 192, p. 802.

In Nichols & Shepard Co. v. Bishop, 12 Okl. 250, 70 P. 188, in a contest for priority between a mortgagee and an attaching creditor, this court said:

"Where a chattel mortgage is given to secure an indebtedness, and the mortgage imperfectly describes the property, so that there is a defect in the description in the mortgage, the defect will be cured if the mortgagee subsequently takes possession of the property, as against those who have not acquired any rights, or whose liens have not attached until after the mortgagee has taken possession."

In Frick Co. v. Oats, 20 Okl. 473, 94 P. 682, this court held that where a mortgagee who had not filed his mortgage with the county clerk, but obtained possession of the mortgaged property some thirty days ahead of an execution creditor, the mortgagee would have priority over the execution creditor. Citing Sec. 3578, Wilson's Rev. & Ann.St.Okla.1903.

In Cameron, Hull & Co. v. Marvin, 26 Kan. 612, one Patterson executed chattel mortgages to Cameron, Hull & Company. These mortgages were not filed as required by the Kansas statute. Sometime after the foregoing mortgages were executed, Goodnow & Co. sold and delivered to Patterson, a car of flour upon the strength and credit of his apparent unincumbered, visible assets. Sometime still later, the mortgagor, Patterson, gave possession of the mortgaged goods to the mortgagee, Cameron, Hull & Co. Nine days after the mortgagee obtained possession of the mortgaged goods, Goodnow & Co. filed an attachment suit.

The Kansas court held that since the mortgagee had been in possession of the mortgaged property for nine days before the attachment was levied the mortgage liens had priority over the attachment lien.

■ An examination of the Kansas case and the Oklahoma cases above cited, reveals that the mortgagees went into possession with the consent of the mortgagors. The use of the word "consent" in those cases has no significance other than to say that the mortgagees obtained possession of the mortgaged properties from the mortgagors legally. As between a mortgagor and mortgagee the mortgagee has no right to use force, threats or violence, nor breach the peace to repossess. To do so is wrongful. Cecil Baber Electric Co. v. Greer, 183 Okl. 541, 83 P.2d 598.

In Garrison v. Street & Harper Furniture & Carpet Co., 21 Okl. 643, 97 P. 978, this court gave undue significance to the expression "consent of the mortgagor" as used by the Kansas court in Cameron, Hull & Co. v. Marvin, supra.

In the Garrison case, supra, Garrison sold Mrs. Wade a lease on a hotel building in Oklahoma City, as well as all furniture therein. He took a chattel mortgage on all furniture therein, and to be located or placed therein, as security for a part of the purchase price. This mortgage was not filed with the county clerk until December 31, 1904. Prior to the filing of the Garrison mortgage, and on December 15, Street & Harper sold some beds and other furniture to Mrs. Wade and took a mortgage on the property they sold to her. On January 3, 1905, at 9 o'clock A.M., Mrs. Wade, the mortgagor, freely delivered all of her property, including that which she had purchased from Street & Harper, to Garrison, the first mortgagee. At 1 o'clock P.M., on the same day, January 3, 1905, Street & Harper filed a replevin action to recover the furniture sold by them to Mrs. Wade

and covered by their mortgage. After judgment in favor of Street & Harper in the trial court the case was reversed by this court on appeal. In so deciding this court followed dictum in the Kansas case, Cameron, Hull & Co. v. Marvin, supra, and quoted with approval from the body of the Kansas case, as follows:

"If the mortgagee * * * takes possession of the property with the consent of the mortgagor, his mortgage then has the force and effect of a mortgage executed on the day on which it is filed for record, or on which the property is delivered. It is the same then as though a new mortgage had been executed by the parties and recorded. The old mortgage is then given life and force and effect by the joint action of both the parties, and hence must be held to be valid from that time on, as against all persons."

This court adopted that view and held that an unfiled chattel mortgage has priority over a subsequent, executed and unfiled chattel mortgage where the first mortgagee thereafter obtains possession of the property with the consent of the mortgagor. We hold that this decision is contrary to and violates 46 O.S.1951 § 57, and is contrary to former common law decisions of this court. So far as we have been able to determine, the Garrison case, supra, is the last expression of this court on the question in controversy.

Appellate Courts should be slow to resort to judicial surgery in upsetting precedents, but they should not knowingly follow precedents that are palpably bad. Ex Parte Lewis, 85 Okl.Cr. 322, 188 P.2d 367.

The case of Garrison v. Street & Harper Furniture & Carpet Company, supra, is expressly overruled.

The unfiled mortgage of the defendants executed on March 11, 1953, lost its priority as to the plaintiff's mortgage on March 14, 1953, when plaintiff accepted his mortgage without actual or constructive notice. The defendants were not a mortgagee in possession on March 14, and under the common law their mortgage was presumptively fraudulent as to the plaintiff. Under the statute, defendants' mortgage was void as against the plaintiff, a subsequent encumbrancer of the property, for value, on March 14, 1953. A later acquiring of possession of the property, with or without the consent of the mortgagor, would be immaterial insofar as the priority of plaintiff's mortgage is concerned. 14 C.J.S., Chattel Mortgages, § 192, p. 802.

For the reasons stated, it is apparent that the trial court was in error in failing to direct a verdict for the plaintiff.

The judgment of the trial court in favor of the defendants is vacated.

After plaintiff gave notice of her intention to appeal the parties entered into a stipulation on January 28, 1954, agreeing that the automobile was worth $2,100 on April 8, 1953, the date when this suit was filed. They further stipulated that on January 28, 1954, the automobile had depreciated in value to $1,700 and they agreed that defendants would deposit $1,700 in a local bank to be paid to the successful party on final determination of the case. They stipulated that the $1,700 was to stand in lieu of the automobile. They further stipulate that it is their intention to avoid loss by further depreciation.

They further stipulated that plaintiff sued for the return of the automobile or its value in the sum of $1,815, together with $100 damages, and "expressly agreed" that the plaintiff does not hereby waive or relinquish any of her rights as against the defendants as set forth and claimed in her petition, and the rights of the parties were to remain except that the automobile was released to the defendants and the money deposited to stand in place of the automobile.

Ordinarily, in a replevin action, plaintiff would be entitled to a return of the automobile or its value as of the time when it was taken. Shipman v. Adamson, 96 Okl. 84, 221 P. 74.

Since it was expressly agreed that plaintiff did not relinquish any rights against the defendants, we render judgment against the defendants for $1,815 in lieu of the return of the automobile.

Plaintiff also sued for $100 for deprivation of the possession of the property since the time of filing her suit on April 8, 1953. Her petition does not further identify her alleged damages and the record is silent as to the nature of her damages. As a mortgagee she is not entitled to the usable value of the automobile in the absence of proof of a right to use. Francis v. Guaranty State Bank of Texola, 44 Okl. 446, 145 P. 324. However, she is entitled to interest on the value of the property during the time of the detention, Warren v. Griffing, 200 Okl. 108, 190 P.2d 1014, which would amply support her claim of $100 damages in this case. Judgment is therefore rendered in favor of plaintiff for $100 damages.

Plaintiff also contends that she is entitled to attorney fees, citing Rogers County Bank v. Cullison, 186 Okl. 373, 98 P.2d 612. Since this question was not passed upon by the trial court, nor briefed for this court, the question of attorney fees is remanded to the trial court for appropriate action.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, DAVISON, HALLEY and BLACKBIRD, JJ., concur.